UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES J. FICHER, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2281** |
| **JERRY GOODWIN** | **SECTION: "N"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Charles Ficher, Jr., is a convicted inmate currently housed in the David Wade Correctional Center in Homer, Louisiana. In November 1992, he was indicted by an Orleans Parish grand jury and charged with one count of second-degree murder.[1] On October 26, 1993, a jury found him guilty as charged.[2] On November 9, 1993, his motion for new trial was denied and he was sentenced to life imprisonment without benefit of

---

[1] State Rec., Vol. 1 of 3, Grand Jury Indictment. The indictment refers to defendant as Charles "Fisher." The state court record also includes the alternate spelling, "Fischer." His federal court petition, however, is styled Charles "Ficher."

[2] State Rec., Vol. 1 of 3, Minute Entry, 10/26/93.

probation, parole or suspension of sentence.[3]

On direct appeal, Ficher's appointed counsel requested only a review for errors patent and moved to withdraw.[4] Ficher, pro se, filed a supplemental brief raising claims of prosecutorial misconduct and insufficiency of the evidence. The appellate court declined to consider the claim of prosecutorial misconduct, noting the issue was better suited for post-conviction relief. The appellate court found the evidence sufficient to support the conviction. On January 19, 1995, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[5] On June 16, 1995, the Louisiana Supreme Court denied his writ of certiorari.[6] His conviction and sentence became final on September 14, 1995, when the 90-day period for seeking a writ of certiorari from the United States Supreme Court expired and he failed to apply for relief. *See* U.S. Sup. Ct. R. 13(1); *see also Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999); *Roberts, supra*.

On October 22, 1996, Ficher submitted an application for post-conviction relief with the state district court.[7] In that application, he asserted that trial counsel was ineffective

---

[3] State Rec., Vol. 1 of 3, Minute Entry, 11/9/93.

[4] *Anders v. California*, 386 U.S. 738 (1967); *State v. Benjamin*, 573 So.2d 528 (La. App. 4 Cir. 1990); *State v. Jyles*, 96-2669 (La. 12/12/97), 704 So.2d 241 (per curiam),

[5] *State v. Fisher*, 94-KA-0191 (La. App. 4 Cir. 1995), 648 So.2d 52 (Table); *see* State Rec., Vol. 2 of 3.

[6] *State v. Fisher*, 95-KO-0476 (La. 1995), 655 So.2d 341; State Rec., Vol. 2 of 3.

[7] State Rec., Vol. 1 of 3, Uniform Application for Post-Conviction Relief. Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006). His application was signed and notarized on October 22, 1996, which is presumably the earliest date he could have placed it in the prison mail system. *See*

2

for failing to adequately investigate and call witnesses and in failing to request a limiting instruction regarding the proper use of prior inconsistent statements made by a witness.[8] On March 9, 1998, the state district court rendered judgment denying relief on the merits.[9]

On or about May 28, 2003, Ficher, having failed to receive a ruling from the state district court with respect to his post-conviction application, filed a writ of mandamus with the Louisiana Fourth Circuit Court of Appeal, seeking to have the state appellate court order the state district court to adjudicate his pending post-conviction application. On June 23, 2003, the state appellate court issued a decision wherein, "[i]n the interest of judicial economy," the court considered the merits of petitioner's pending post-conviction application and determined that petitioner was "not entitled to relief." Further, in light of its adjudication on the merits of petitioner's post-conviction application, the Louisiana Fourth Circuit denied petitioner's request for a writ of mandamus as moot. *State v. Ficher (Fisher)*, No. 2003-K-0964 (La. App. 4 Cir. 2003) (unpublished decision). In connection with the state appellate court's June 23, 2003 denial of post-conviction relief, petitioner filed a writ application with the Louisiana Supreme Court. On August 20, 2004, the Louisiana Supreme Court denied petitioner's writ application. *State ex rel. Ficher v. State*, No. 2003-KH-2071, 882 So.2d 564 (La. 2004).

---

Affidavit attached to PCR application.

[8] The procedural history recited herein with respect to Ficher's first state-court post-conviction application was taken from the Report and Recommendation issued in his first federal habeas proceeding, which was dismissed without prejudice for failure to exhaust state court remedies. *Charles Ficher v. Burl Cain*, Civ. Action No. 05-6373 "N"(5) (E.D. La. 2005). The referenced documents may be found generally at State Rec., Vol. 3 of 3.

[9] State Rec., Vol. 1 of 3, Judgment, 3/9/98.

3

In September 2004, Ficher filed with the Louisiana Fourth Circuit Court of Appeal a second application for writ of mandamus, again complaining that the state district court had failed to issue a ruling on his post-conviction claim that counsel was ineffective for failing to present certain witnesses to testify at trial and failing to request a limiting jury instruction. On September 27, 2004, the Louisiana Fourth Circuit, noting that petitioner, pursuant to his second writ of mandamus, was seeking relief in connection with the same post-conviction application which the court had earlier rejected, denied petitioner's writ application "as repetitive." *State v. Ficher*, No. 2004-K-1587 (La. App. 4 Cir. 2004) (unpublished decision). On August 19, 2005, the Louisiana Supreme Court rejected petitioner's writ application, stating: "Denied. Moot. The [C]ourt of Appeal has acted." *State ex rel. Ficher v. State*, No. 2004-KH-2820, 908 So.2d 663 (La. 2005).

On October 6, 2005, Ficher filed his first federal habeas corpus application with this Court. In that application, he asserted that (1) he was denied a fair trial due to prosecutorial misconduct; (2) his conviction was based on insufficient evidence; (3) he received ineffective assistance of counsel for failing to present witnesses on his behalf and to request a limiting instruction regarding the use of prior inconsistent statements; and (4) the grand-jury indictment was unconstitutionally obtained. His federal application was considered a timely-filed "mixed" petition, containing both exhausted claims (Nos. 2, 3) and unexhausted claims (Nos. 1, 4), and was dismissed without prejudice for failure to exhaust state-court remedies on November 19, 2008.

On March 18, 2013, Ficher submitted a second application for post-conviction relief

with the state district court.[10] In that application, he asserted claims of prosecutorial misconduct and ineffective assistance of trial counsel as grounds for relief. He argued that the prosecutor misrepresented himself as a defense attorney, that his trial counsel failed to present a witness or request a limiting instruction concerning prior inconsistent statements and that counsel failed to file a motion to quash the indictment on grounds that the grand-jury foreman was unconstitutionally selected. He argued that his failure to raise these grounds earlier should be excused under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), because he had no counsel during his first collateral-review proceedings. On May 14, 2013, the state district court denied relief, finding his reliance on *Martinez* was misplaced.[11] On September 4, 2013, Ficher submitted a related supervisory writ application to the Louisiana Fourth Circuit Court of Appeal. On October 3, 2013, the appellate court found that his claims were time-barred under Louisiana Code of Criminal Procedure article 930.8.[12] On October 22, 2013, he filed a supervisory writ application with the Louisiana Supreme Court. On June 20, 2014, the Louisiana Supreme Court denied the application as untimely, citing Louisiana Code of Criminal Procedure article 930.8 and *Glover v. State*, 93-2330 (La. 9/5/95),

---

[10] State Rec., Vol. 3 of 3, Uniform Application for Post-Conviction Relief. As noted by the State, the application contained in the state-court record is undated. However, in his reply, Ficher submitted a copy of a withdrawal request slip for funds (dated March 18, 2013), which he claims reflects the date he mailed the PCR application to the state district court. Rec. Doc. 13. The Court will adopt that date, which coincides with the State's assertion that "at some point in early 2013, he filed a new application for post-conviction relief." Rec. Doc. 12, p. 4.

[11] State Rec., Vol. 3 of 3, District Court Judgment denying PCR signed May 14, 2013.

[12] State Rec., Vol. 3 of 3, *State v. Charles Fischer, Jr.*, 2013-K-1315 (La. App. 4 Cir. Oct. 3, 2013).

660 So.2d 1189.[13]

On September 24, 2014, he filed the instant federal application for habeas corpus relief.[14] In that application, he asserts as grounds for relief: (1) he was denied a fair trial due to prosecutorial misconduct and (2) ineffective assistance of trial counsel for failing to (a) present a witness, (b) request a limiting instruction concerning proper use of prior inconsistent statements, and (c) challenge the grand-jury indictment. The State argues that the application should be dismissed as untimely.[15] Ficher has filed a reply.[16]

**Analysis**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, governs the filing date for this action because Ficher filed his habeas petition after the AEDPA's effective date. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Title 28 U.S.C. § 2244(d) provides:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

---

[13] *State ex rel. Charles Fischer, Jr. v. State*, 2013-KH-2543 (La. 6/20/14), 141 So.3d 279.

[14] Rec. Doc. 1, 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." *Roberts v. Cockrell*, 319 F.3d 690, 691 n. 2 (5th Cir. 2003). The petition itself is undated, but includes an attachment that is signed and dated September 24, 2014, which is the date used in the State's response. The Court will adopt that date as well considering his application presumably could not have been placed in the prison mailing system any earlier than that date. The fact that he paid the filing fee two years later does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

[15] Rec. Doc. 12.

[16] Rec. Doc. 13.

> A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Typically, a petitioner must bring his Section 2254 claims within one year of the date on which his underlying criminal judgment becomes "final." With regard to finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." *Id*. at 694; *see also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. *See Foreman*, 383 F.3d at 338–39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir. 2006); *Roberts*, 319 F.3d at 693.

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008).

As previously noted, Ficher's state criminal judgment of conviction became final for AEDPA purposes on September 14, 1995, when his time expired for seeking further direct review by writ of certiorari with the United States Supreme Court. The one-year limitations period would have expired September 14, 1996. However, as this Court previously found, Ficher had a one-year grace period from April 24, 1996 until April 24, 1997, to file a federal application because his conviction became final prior to the AEDPA's effective date. However, Ficher did not file the instant federal habeas petition with this Court until September 24, 2014. Thus, his application must be dismissed as untimely, unless the deadline was extended through tolling.

A. *Statutory Tolling*

Regarding the statute of limitations, the AEDPA expressly provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Given the statutory tolling to which he was entitled for his first round of state-court collateral-review proceedings began on October 22, 1996 and was pending through August 19, 2005, this Court concluded that his first federal application was timely filed on October 6, 2005 (albeit not fully exhausted).[17] However, the one-year limitation period is not tolled during the pendency of federal habeas proceedings, *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001), and

---

[17] At the time he filed his first federal habeas petition, the Court found that 178 of the 365 days had elapsed. *Charles Ficher v. Burl Cain*, 05-6373 "N"(5) (E.D. La.). Rec. Doc. 12, p. 8.

Ficher did not file any other applications for post-conviction relief or collateral review with the state district court until March 2013. By that time, however, the one-year federal limitations period had long since expired. Therefore, his second post-conviction relief application filed with the state district court in 2013, nearly seven years after the one-year federal limitations period had run, could not possibly afford him any tolling benefit. *See Madden v. Thaler*, 521 F. Appx. 316, 320 (5th Cir. 2013); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Magee v. Cain*, Civ. Action No. 99–3867, 2000 WL 1023423, at *4, *aff'd*, 253 F.3d 702 (5th Cir. 2001) (citing *Williams v. Cain*, Civ. Action No. 00–536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000)). Simply put, once the federal limitations period expired, "[t]here was nothing to toll." *Butler,* 533 F.3d at 318. His federal application is therefore untimely even after affording him the applicable statutory tolling credit pursuant to § 2244(d)(2).

B. *Equitable Tolling*

Additionally, the Court recognizes that the AEDPA's statute of limitations is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. at 649 (internal quotation marks omitted); *see also Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002). Here, Ficher does not argue that he is entitled to equitable tolling. Furthermore, the record shows an inexplicable lack of diligence on his part and no

extraordinary circumstances that would warrant equitable tolling. It is well-settled that mistake, ignorance of the law, and a prisoner's pro se status do not suffice to justify equitable tolling. *Johnson v. Quarterman*, 483 F.3d 278, 286 (5th Cir. 2007); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002); *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000). Accordingly, the Court finds that Ficher is not entitled to equitable tolling.

   *C. Actual Innocence*

The Court briefly addresses any claim Ficher may raise that the limitations period should be tolled because he is actually innocent of the crime for which he was convicted. In *McQuiggin v. Perkins*, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass... [to excuse] the expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). The Supreme Court has cautioned, however, that "tenable actual-innocence gateway pleas are rare[.]" *Id*. To succeed on this claim, a petitioner must present a credible claim of actual innocence based on "new reliable evidence... that was not presented at trial," and he "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of that new evidence of his factual innocence. *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

Here, Ficher fails to provide any compelling grounds for such a claim. He suggests that he is actually innocent because prosecution witness, Robert Young, offered inconsistent and therefore arguably "unreliable" testimony at trial. As "new" evidence in support of the actual innocence claim, he points to an affidavit he obtained from an uncalled defense witness, Kimmie Alexander, whom he disclosed to defense counsel in advance of trial. In

her affidavit, she states she saw someone other than Ficher shoot the victim.[18]

The record facts as succinctly summarized by the Louisiana Fourth Circuit on direct appeal established the following:

> On May 13, 1992, around noon, Arland Burrell went to pick up Kevin Smith in the Calliope Housing Project in an automobile owned by Smith's mother, Geraldine Johnson. Ms. Johnson lent the Oldsmobile Delta Eighty-Eight to Burrell earlier that day. Burrell was sitting in the driver's seat and Smith was standing outside the car near the front passenger's seat when Burrell saw the defendant approach the car and shoot Smith with a shotgun. Burrell drove off, but stopped approximately one and a half blocks from the scene of the shooting. Later Burrell identified the defendant's photograph from a photographic line-up. Another witness, Robert Young, testified at trial that he, too, saw the defendant shoot Kevin Smith with a shotgun. Young also selected the defendant's photograph from the line-up. According to Dr. Susan Garcia, an expert in the field of forensic pathology, Smith died as the result of three shotgun blasts, one each to the head, chest and lower back. The defendant was arrested in Dekalb County, Georgia, on July 24, 1992, and extradited to Louisiana on October 24, 1992.
>
> The defendant presented an alibi defense and attempted to impeach the credibility of witness Robert Young. The defendant's girlfriend, Alecia Boutte, testified that the defendant, a senior at Sara T. Reed High School, was the father of her baby and living at her house at the time of the murder. She stated that the defendant was in bed with her when she awoke that day. However, on cross-examination, Ms. Boutte admitted that she did not know what time she woke up. The defendant's mother related that her son was living with Ms. Boutte at the time of the murder. The defendant testified that he knew Smith from the neighborhood and told Smith not to sell drugs in front of his mother's home. The defendant, who was not attending school at the time of the murder, denied killing Smith.[19]

In rejecting Ficher's direct appeal claim that the evidence was insufficient to support the conviction, the court of appeal reasoned:

> The defendant also argues that the evidence was insufficient to support the jury's verdict. He points out that state witness Robert Young's credibility at

---

[18] Rec. Doc. 1-1, p. 2.

[19] *State v. Fisher*, 95-0476 (La. App. 4 Cir. Jan. 19, 1995) (unpublished).

trial was impeached by his contrary testimony given at the motion to suppress hearing.

Young gave a statement to police hours after the shooting incident. At that time, he told police that he had seen the defendant shoot the victim with a shotgun. Young initialed each page of the statement and signed it. At the suppression hearing on March 2, 1993, Young denied seeing the shooting, insisted that he had not voluntarily signed the statement, and maintained that he had not independently selected the defendant's photograph from the line-up. Detective Anthony Caprerra testified on March 2, 1993, that Young had independently selected the defendant's photograph from the line-up. Officer Wayne Rumore, the police officer who took Young's statement, testified at the hearing on April 13, 1993. He stated that Young had voluntarily given the statement and denied coercing or threatening the witness in any manner. At trial, Young testified that he saw the defendant shoot the victim with a shotgun, but Young admitted that he testified differently at the motion to suppress hearing on March 2, 1993. Young admitted that he has a conviction for possession of cocaine and that he was then serving a sentence for possession of heroin. He insisted that, though he lied at the suppression hearing, he told the truth in his statement given to police several hours after the shooting and that he was telling the truth to the jury.

Even if the defense impeached Young's credibility, the state introduced other evidence which was sufficient to support the jury's verdict. Dr. Garcia testified that the victim was shot three times with a shotgun at close range. Burrell stated to the police and testified at trial that he saw the defendant shoot Kevin Smith with a shotgun. Considering that Burrell's statement that Smith and he sold drugs was an admission against his own interest, the jury chose to believe his testimony regarding the shooting incident rather than the testimony of the defendant. Upon this evidence, viewed in a light most favorable to the prosecution, any rational jury could have found beyond a reasonable doubt that the state met its burden of proving pursuant to La. R.S. 14:30.1 that the defendant murdered the victim with the specific intent to kill or to inflict great bodily harm.[20]

Even if the evidence offered by Ficher could be considered "new," Ficher's assertions regarding Young's inconsistent statements and Alexander's proposed testimony fail to satisfy the rigorous burden of showing that he was factually innocent of second-degree

---

[20] *Id*. at pp. 4-5.

murder.[21] His assertions establish only the existence of conflicting evidence and credibility issues. *Bosley v. Cain*, 409 F.3d 657, 665 (5th Cir. 2005). He has not shown that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of this purported new evidence of his factual innocence. *Schlup*, 513 U.S. at 324.

D. *Other Tolling Relief*

Finally, to the extent Ficher suggests that *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), excuses his untimely federal application, the Court rejects any such argument. *See also Trevino v. Thaler*, 133 S.Ct. 1911 (2013). In *Martinez*, the Supreme Court held that a procedural bar imposed by state courts " 'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.' " *Trevino v. Thaler*, 133 S.Ct. at 1912 (quoting *Martinez*, 132 S. Ct. at 1320). Neither decision addresses nor provides an excuse for the untimely filing of a federal habeas petition. *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report and Recommendation). Nor do *Martinez*

---

[21] As the record shows, the defense highlighted the inconsistency in Young's testimony at trial; the jury weighed his credibility in reaching the guilty verdict. Furthermore, as Ficher maintains and Alexander's affidavit reflects, the defense admittedly knew before trial about Alexander, who allegedly could have offered conflicting testimony about the shooter.

or *Trevino* constitute new rules of constitutional law made retroactive on collateral review to start a new one-year statute of limitations period under the AEDPA. *See In re Paredes*, 587 F. Appx. 805, 813 (5th Cir. Oct. 25, 2014) ("... the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012). Any such argument under *Martinez* for equitable or statutory relief for his untimely filing under the AEDPA, is simply misplaced.

Ficher's application was filed more than eight years after the federal limitations period expired. He has not established that the actual-innocence exception applies or that the limitations period was tolled. Therefore, his federal habeas corpus petition should be dismissed with prejudice as untimely.

## RECOMMENDATION

**IT IS RECOMMENDED** that Ficher's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**. A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[22]

---

[22] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that

New Orleans, Louisiana, this __8th__ day of ___September___, 2017.

_____
**MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE**

---

period to 14 days.