**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CHARLES F. FICHER, JR.**[1]              **CIVIL ACTION**

**VERSUS**                                  **NO.   14-2281**

**JASON KENT, WARDEN**                      **SECTION: "E"(5)**

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record,[2]  the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

*Procedural History*

Petitioner, Charles J. Ficher, Jr., is a convicted inmate currently incarcerated at the David Wade Correction Center in Homer, Louisiana.    On November 12, 1992, Ficher was charged by bill of indictment in Orleans Parish with second-degree murder of Kevin Smith in violation of La. Rev. Stat. § 14:30.1.[3]    On October 26, 1993, a jury found Ficher guilty as

---

[1]  Ficher's federal application is styled Charles J. Ficher, Jr.    This was apparently a typographical error, because his later filings bear the name Charles F. Ficher, Jr.

[2]  The State electronically filed the state court record at ECF No. 57, 57-1, 57-2, 57-3, 57-4, 57-5, 57-6, 57-7, 57-8, and 57-9.    Ficher's surname sometimes appears as "Fisher" or "Fischer" in state-court documents.

[3]  ECF No. 57-1 at 21-22, Bill of Indictment, 11/12/92.

charged.[4]

On November 9, 1993, the trial court denied Ficher's motion for new trial.[5]    On that same date, the trial court sentenced Filcher to life imprisonment without the benefit of parole, probation or suspension of sentence.[6]

On direct appeal, the Ficher's appointed counsel requested that the appellate court examine the record for error patent.[7]    Ficher filed a pro se supplemental brief claiming: (1) prosecutorial misconduct and (2) insufficient evidence.[8]    On January 19, 1995, the Louisiana Fourth Circuit affirmed Ficher's convictions and sentences.[9]    On June 16, 1995, the Louisiana Supreme Court denied Ficher's related writ application without reasons.[10]

On October 22, 1996, Ficher submitted an application for post-conviction relief with the state district court.[11]    In that application, he asserted that trial counsel was ineffective for failing to adequately investigate and call a witness, Kimmie Alexander, and in failing to request a limiting instruction regarding the proper use of prior inconsistent statements made by a witness.    On March 9, 1998, the state district court rendered judgment denying

---

[4]  ECF No. 57-2 at 77-78, Trial Minute Entry, 10/26/93; ECF No. 57-1 at 122, Verdict, 10/26/93; ECF No. 57-2 at 158-236, Trial Transcript, 10/26/93.

[5]  ECF No. 57-1 at 6, Sentencing Minute Entry, 11/9/93; ECF No. 57-2 at 132, Motion for a New Trial, undated.

[6]  *Id.*

[7]  ECF No. 57-2 at 87-89, Appeal Brief, 94-KA-0191, 2/10/94.

[8]  ECF No. 57-2 at 65-70, Supplemental Brief, 94-KA-0191, 4/14/94.

[9]  *State v. Fisher,* 94-KA-0191 (La. App. 4 Cir. 1/19/95), 648 So. 2d 52 (Table in Westlaw); ECF No. 57-2 at 3-8.

[10]  *State v. Fisher,* 95-KO-0476 (La. 6/16/95), 655 So. 2d 341; ECF No. 57-1 at 130.

[11]  ECF No. 57-3 at 24-38, Uniform Application for Post-Conviction Relief, 10/22/96.    The docket master does not reflect this filing.    *See* ECF No. 57-1 at 2, Docket Master, 5/11/93-6/17/13.

relief on the merits.[12]

Another application for post-conviction relief was filed June 19, 1998.[13]    That application refers to the uncalled witness as Elmegio Alexander.[14]    Thereafter, Ficher wrote the state district court inquiring about the status of that application.[15]    On April 8, 2003, Ficher sought to amend his application to change the witness's name from Elmegia Alexander to Kimmie Alexander and included an affidavit signed by Kimmie Alexander.[16]

On or about May 28, 2003, having failed to receive the ruling from the state district court with respect to his June 1998 post-conviction application, Ficher filed a writ of mandamus with the Louisiana Fourth Circuit Court of Appeal, seeking to have the state appellate court order the state district court to adjudicate his pending post-conviction application.[17]    In that writ application, he referred to the uncalled witness as Kimmie Alexander and included an affidavit signed by her.[18]

---

[12]   ECF No. 57-1 at 27, Judgment on Motion for Post Conviction Relief, 3/9/98.

[13]   ECF No. 57-1 at 2, Docket Master, 5/11/93-6/17/13; ECF No. 57-1 at 42-47, Uniform Application for Post-Conviction Relief, signed 4/30/98 (file stamped 6/19/98).    The record also includes an application for post-conviction relief file stamped by the district court's clerk's office on April 8, 1998. *See* ECF No. 57-1 at 23-26, 49-61, 62-74, Uniform Application for Post-Conviction Relief, undated (file stamped 4/8/98).    The first page of what appears to be part of the same or another application includes date stamps for both October 24, 1996 and April 8, 1998.    *See id* at 30, First Page of Uniform Application for Post-Conviction Relief, file stamped 10/24/96 and 4/8/98.

[14]   ECF No. 57-1 at52, 56-58, 66, 70-72, Uniform Application for Post-Conviction Relief, undated (file stamped 4/8/98).

[15]   ECF No. 57-1 at 32, Letter, 1/30/01; *id.* at 35-36, Letter, 9/10/01; ECF No. 57-3 at 11, Letter 11/27/99; *id.* at 12, Letter, 6/2/00; *id.* at 13, Letter, 1/30/01; *id.* at 15, Letter, undated.

[16]   ECF No. 57-3 at 10, Motion to Supplement or Amend, 4/8/03; id. at 9, Affidavit of Kimmie Alexander, 4/1/03.

[17]   ECF No. 57-3 at 2-9, Writ Application, 2003-K-0964, 5/28/03 (signed 5/21/03).

[18]   *Id.* at 5, 9 Writ Application, 2003-K-0964, 5/28/03 (signed 5/21/03).

On June 23, 2003, the state appellate court issued a decision wherein, "[i]n the interest of judicial economy," the court considered the merits of petitioner's pending post-conviction application and determined that petitioner was "not entitled to relief."[19]    Further, in light of its adjudication on the merits of Ficher's post-conviction application, the Louisiana Fourth Circuit denied Ficher's request for a writ of mandamus as moot.[20]    In connection with the state appellate court's June 23, 2003 denial of post-conviction relief, Ficher filed a writ application with the Louisiana Supreme Court.[21]    On August 20, 2004, the Louisiana Supreme Court denied Ficher's writ application.[22]

In September 2004, Ficher filed with the Louisiana Fourth Circuit Court of Appeal a second application for writ of mandamus, again complaining that the state district court had failed to issue a ruling on his post-conviction claim that counsel was ineffective for failing to present certain witnesses to testify at trial and failing to request a limiting jury instruction.[23] On September 27, 2004, the Louisiana Fourth Circuit, noting that Ficher, pursuant to his second writ of mandamus, was seeking relief in connection with the same post-conviction application which the court had earlier rejected, denied Ficher's writ application "as repetitive."[24]    On August 19, 2005, the Louisiana Supreme Court rejected Ficher's writ

---

[19]  *State v. Ficher (Fisher)*, 2003-K-0964 (La. App. 4 Cir. 6/23/03) (unpublished decision); ECF No. 57-7 at 9.

[20]  *Id.*; ECF No. 57-7 at 9.

[21]  ECF No. 57-7 at 3-8, Writ Application, 03 KH 2071, 7/24/03 (signed 7/11/03).

[22]  *State ex rel. Ficher v. State*, 2003-KH-2071, 882 So.2d 564 (La. 2004); ECF No. 57-7 at 1.

[23]  ECF No. 57-4 at 25-, Writ Application, 2004-K-1587, 9/8/04 (signed 9/1/04).

[24]  *State v. Ficher*, No. 2004-K-1587 (La. App. 4 Cir. 2004) (unpublished decision); ECF No. 57-8 at 9.

application, stating: "Denied.    Moot.    The [C]ourt of Appeal has acted."[25]

On October 6, 2005, Ficher filed his first federal habeas corpus application with this Court.[26]    In that application, he asserted that (1) he was denied a fair trial due to prosecutorial misconduct; (2) his conviction was based on insufficient evidence; (3) he received ineffective assistance of counsel for failing to present witnesses on his behalf and to request a limiting instruction regarding the use of prior inconsistent statements; and (4) the grand jury indictment was unconstitutionally obtained.    His federal application was considered a timely-filed "mixed" petition, containing both exhausted claims (Nos. 2, 3) and unexhausted claims (Nos. 1, 4), and was dismissed without prejudice for failure to exhaust state-court remedies on November 19, 2008.[27]

On March 18, 2013, Ficher submitted a second application for post-conviction relief with the state district court.[28]    In that application, he asserted claims of prosecutorial misconduct and ineffective assistance of trial counsel as grounds for relief.    He argued that the prosecutor misrepresented himself as a defense attorney, that his trial counsel failed to present a witness or request a limiting instruction concerning prior inconsistent statements, and that counsel failed to file a motion to quash the indictment on grounds that the grand-jury foreman was unconstitutionally selected.    He argued that his failure to raise these grounds earlier should be excused under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), because

---

[25]    *State ex rel. Ficher v. State*, No. 2004-KH-2820, 908 So.2d 663 (La. 2005); ECF No. 57-8 at 1.

[26]    *Ficher v. Cain*, No. 2:05-cv-6373-N(5), ECF No. 1, 3, 1/31/06

[27]    *Ficher v. Cain*, No. 2:05-cv-6373, 2008 WL 4974431 (E.D. La. Nov. 19, 2008).

[28]    ECF No. 57-5 at 19-29, Uniform Application for Post-Conviction Relief, undated; *See* ECF No. 57-1 at 2, Docket Master Entry, 5/14/13.

he had no counsel during his first collateral-review proceedings.    On May 14, 2013, the state district court denied relief, finding his reliance on *Martinez* was misplaced.[29]

On September 4, 2013, Ficher submitted a related supervisory writ application to the Louisiana Fourth Circuit Court of Appeal.[30]    On October 3, 2013, the appellate court found that his claims were time-barred under Louisiana Code of Criminal Procedure article 930.8.[31] On October 22, 2013, he filed a supervisory writ application with the Louisiana Supreme Court.[32]    On June 20, 2014, the Louisiana Supreme Court denied the application as untimely, citing Louisiana Code of Criminal Procedure article 930.8 and *Glover v. State*, 93-2330 (La. 9/5/95), 660 So.2d 1189.[33]

On September 24, 2014, he filed the instant federal application for habeas corpus relief.[34]    In that application, he asserts as grounds for relief: (1) he was denied a fair trial due to prosecutorial misconduct; (2) insufficient evidence; and (3) ineffective assistance of trial counsel for failing to (a) present a witness, (b) request a limiting instruction concerning proper use of prior inconsistent statements; and (c) challenge the grand jury indictment by filing a motion to quash.    The State initially argued that the application should be dismissed

---

[29]  ECF No. 57-5 at 30, Order on Application for Post-Conviction Relief, 5/14/13.

[30]  ECF No. 57-5 at 2-18, Writ Application, 2013-K-1315, 9/25/13 (signed 9/4/13)

[31]  *State v. Fischer*, 2013-K-1315 (La. App. 4 Cir. 10/3/13) (unpublished decision); ECF No. 57-9 at 20.

[32]  ECF No. 57-9 at 2-19, Writ Application, 13 KH 2543, 10/29/13 (signed 10/22/13).

[33]  *State ex rel. Charles Fischer, Jr. v. State*, 2013-KH-2543 (La. 6/20/14), 141 So.3d 279; ECF No. 57-9 at 1.

[34]  ECF No. 1.

as untimely.[35]    Ficher filed a reply brief.[36]    On September 8, 2017, this Court recommended that the petition be dismissed with prejudice as untimely.[37]    The District Judge adopted the report and recommendation on November 2, 2017, and dismissed the case with prejudice.[38]

On November 29, 2017, after receiving a letter from Ficher indicating that he did not receive a copy of the report and recommendation, the District Judge gave him additional time by which to file objections.[39]    Ficher filed objections, which the District Judge overruled, and again dismissed the case with prejudice.[40]

Ficher filed a notice of appeal.[41]    On November 23, 2020, the Fifth Circuit Court of Appeals remanded the case for the limited purpose of determining whether Ficher timely filed his notice of appeal.[42]    On remand, the State consented to the timeliness of the notice of appeal.[43]    This Court recommended that Ficher's notice of appeal be deemed timely filed.[44]    On April 1, 2021, the District Judge adopted the report and recommendation.[45]

---

[35] ECF No. 12.

[36] ECF No. 13.

[37] ECF No. 14.

[38] ECF No. 16.

[39] ECF No. 21.

[40] ECF Nos. 24, 27.

[41] ECF No. 33.

[42] ECF No. 35.

[43] ECF No. 41; *See* ECF No. 43.

[44] ECF No. 44.

[45] ECF No. 45.

On appeal, the State abandoned its timeliness defense.[46]    Given the "deliberate decision by the State to forgo a debatable defense," the Fifth Circuit vacated the decision and remanded the case for a determination of the issues on the merits.[47]

On August 2, 2023, the State filed a supplemental response.[48]    The State claims that Ficher's claims of prosecutorial misconduct and ineffective assistance of counsel for failure to file a motion to quash based on unconstitutional selection of the grand jury foreperson are not exhausted.[49]    The State concedes that Ficher's claim of ineffective assistance of counsel for failure to request a limiting instruction is exhausted, but meritless.[50]    The State claims that Ficher's claim of ineffective assistance of counsel for failure to call Kimmie Alexander is "[a]rguably" exhausted, but also meritless.[51]    The State did not respond to Ficher's insufficiency of the evidence claim, possibly because Ficher did not include that claim in the "Grounds for Present Petition," but rather listed the claim in section 6(c)(v) and in the "Supporting Facts" section of his petition.[52]   Ficher, through retained counsel, filed a reply in which he addresses solely his claims of ineffective assistance of counsel for failing to call Alexander to testify and failure to request a limiting instruction regarding Young's prior

---

[46]   *See Ficher v. Bickham*, 70 F.4th 257, 258-60 (5th Cir. 2023).

[47]   *Id.* at 260-61.

[48]   ECF No. 57.

[49]   *Id.* at 7-8.

[50]   *Id.* at 7-9.

[51]   *Id.* at 7-10.

[52]   *See* ECF No. 1 at 2-3, 5, 10.

inconsistent statements.[53]    He further claims that he is actually innocent.[54]

*Facts*

The record facts as succinctly summarized by the Louisiana Fourth Circuit on direct

appeal established the following:

> On May 13, 1992, around noon, Arland Burrell went to pick up Kevin Smith in the Calliope Housing Project in an automobile owned by Smith's mother, Geraldine Johnson.    Ms. Johnson lent the Oldsmobile Delta Eighty-Eight to Burrell earlier that day.    Burrell was sitting in the driver's seat and Smith was standing outside the car near the front passenger's seat when Burrell saw the defendant approach the car and shoot Smith with a shotgun. Burrell drove off, but stopped approximately one and a half blocks from the scene of the shooting.    Later Burrell identified the defendant's photograph from a photographic line-up.    Another witness, Robert Young, testified at trial that he, too, saw the defendant shoot Kevin Smith with a shotgun. Young also selected the defendant's photograph from the line-up.    According to Dr. Susan Garcia, an expert in the field of forensic pathology, Smith died as the result of three shotgun blasts, one each to the head, chest and lower back. The defendant was arrested in Dekalb County, Georgia, on July 24, 1992, and extradited to Louisiana on October 24, 1992.

> The defendant presented an alibi defense and attempted to impeach the credibility of witness Robert Young.    The defendant's girlfriend, Alecia Boutte, testified that the defendant, a senior at Sara T. Reed High School, was the father of her baby and living at her house at the time of the murder.    She stated that the defendant was in bed with her when she awoke that day. However, on cross-examination, Ms. Boutte admitted that she did not know what time she woke up.    The defendant's mother related that her son was living with Ms. Boutte at the time of the murder.    The defendant testified that he knew Smith from the neighborhood and told Smith not to sell drugs in front of his mother's home.    The defendant, who was not attending school at the time of the murder, denied killing Smith.[55]

*Preliminary Review- Exhaustion and Procedural Default*

The Court first considers the State's assertion that two of Ficher's claims are

---

[53]  ECF No. 58.

[54]  *Id.*

[55]  *State v. Fisher*, 95-0476 (La. App. 4 Cir. Jan. 19, 1995) (unpublished); ECF No. 57-2 at 4-5.

procedurally barred from federal review because he failed to exhaust his remedies in the state courts. The State argues that Ficher failed to raise his claim of prosecutorial misconduct in his first application for post-conviction relief, and that when he raised the claim in his second application, it was found to be untimely. The State continues that, while Ficher raised his claim of ineffective assistance of counsel for failure to file a motion to quash in a supplemental filing to the state district court, he did not raise it in his writ applications to either to Louisiana Fourth Circuit or the Louisiana Supreme Court.

### A. Exhaustion

A petitioner seeking habeas corpus relief under 28 U.S.C. § 2254 must first exhaust his remedies in the state courts before seeking habeas corpus relief from the federal courts. *See* 28 U.S.C. § 2254(b)(1); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lun*dy, 455 U.S. 509, 519–20 (1982)); *Nobles v. Johnson*, 127 F.3d 409, 419 (5th Cir. 1997). As the United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

*Rose v. Lundy*, 455 U.S. at 518 (citations, footnote, quotation marks, and brackets omitted).

"To exhaust, a petitioner 'must have fairly presented the substance of his claim to the state courts.'" *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). That requirement applies to all levels of review in the state-court system, meaning that a petitioner's federal

claim must have been "fairly presented" to "each appropriate state court (including a state supreme court with powers of discretionary review)."    *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (emphasis added).    As the United States Fifth Circuit has explained:

> Fair presentation does not entertain presenting claims "for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor."    *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) (quotation marks omitted).    The purposes of the exhaustion requirement "would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it."    *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

*Carty v. Thaler*, 583 F.3d 244, 254 (5th Cir. 2009).

"[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.    *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Thus, in order to exhaust fully, the substance of the federal habeas claim must be fairly presented to the State's highest court.    *See Whitehead v. Johnson*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)).    In Louisiana, the highest state court is the Supreme Court of Louisiana.    *See* La. Const. art. V, § 5(A).

Here, the State correctly contends that Ficher failed to fairly present his claim of ineffective assistance of counsel for failure to file a motion to quash to the Louisiana Fourth Circuit and the Louisiana Supreme Court, and the claim is unexhausted.    *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—the applicant has exhausted the remedies available in the courts of the State...."); *Spellman v.*

*Cain*, Civ. Action No. 15-824, 2016 WL 2637658, at *3-4 (E.D. La. Feb. 19, 2016), *report and recommendation adopted*, 2016 WL 2594837 (E.D. La. May 5, 2016); *Carty v. Thaler*, 583 F.3d at 253-54 ("When undertaking review, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts.").    He therefore has not exhausted his state-court remedies as to that claim as required by federal law.

Ficher's failure to exhaust this claim in the state courts presents an additional problem, and basis for dismissal of his federal claim, *i.e.*, a procedural bar in federal court. If, as is the case here, a "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are likewise considered defaulted in federal court and must be dismissed.    *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted).

Ficher is no longer able to bring his unexhausted claim in the state courts.    He is procedurally barred from doing so under state law because his time for seeking review in that court has run.    Additionally, any attempt to re-litigate his claims now likely would be dismissed as repetitive under Louisiana Code of Criminal Procedure article 930.4, or as time-barred by the provisions of Louisiana Code of Criminal Procedure article 930.8.[56]    When state-court remedies are rendered unavailable by the petitioner's own procedural default,

---

[56] Art. 930.4(D) provides that "[a] successive application may be dismissed if it fails to raise a new or different claim."    Art. 930.4(E) also provides "[a] successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."    Applications for post-conviction relief must be filed within "two years of the date of the judgment of conviction and sentence has become final under the provisions of Article 914 or 922" unless an exception to the time limitation applies.    La. Code Crim. P. art. 930.8(A).

federal courts are normally barred from reviewing those claims. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

As the state-court review of Ficher's unexhausted claim must be deemed technically exhausted, the claim must be evaluated for procedural default. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996) ("... the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim ..."); *Colema*n, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas ...").

The procedural bar created by a petitioner's created technical exhaustion stands as an adequate and independent state procedural ground and prevents federal habeas corpus review of a defaulted claim. *Gray*, 518 U.S. at 162; *see also*, *Coleman*, 501 U.S. at 735 n.1; *Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001). The State, however, has not addressed or considered the propriety of a procedural bar to the ineffective assistance of trial counsel claim under the United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), and *Trevino v. Thaler*, 569 U.S. 413, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013).[57] The Court need not require argument on this point,

---

[57] In *Martinez*, the Supreme Court held that a procedural bar imposed by a state court " 'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.' " *Trevino*, 569 U.S. at 417, 133 S.Ct. 1911 (quoting *Martinez*, 566 U.S. at 17, 132 S.Ct. 1309). As shown in this report, Ficher has no substantial claim of ineffective assistance of trial counsel that would provide any relief under *Martinez*.

however, because the unexhausted ineffective assistance of trial counsel claim is not substantial and is wholly meritless, and this Court will dispose of the claim on the merits. 28 U.S.C. § 2254(b)(2).

### B. Procedural Default

While Ficher raised his claim of prosecutorial misconduct in his second application for post-conviction relief, in actuality the state courts imposed a procedural bar to that claim. The state courts found it to be untimely under La. Code Crim. P. art. 930.8    To the extent that this differs from the State's exhaustion defense, the Court raises the issue of procedural bar *sua sponte*.    Accordingly, **Ficher is hereby specifically instructed that this report and recommendation is notice to him that this Court is *sua sponte* raising the issue of procedural default and that he must submit any evidence or argument concerning the default as part of any objections he may file to this report**.    *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998) (finding that a federal district court may "raise a habeas petitioner's procedural default sua sponte and then apply that default as a bar to further litigation of petitioner's claim.).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state-law ground that is both independent of the merits of the federal claim and adequate to support that judgment.    *Coleman*, 501 U.S. at 731–32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989) ).    The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the

> court's decision.    To satisfy the "independent" and "adequate" requirements,
> the dismissal must "clearly and expressly" indicate that it rests on state
> grounds which bar relief, and the bar must be strictly or regularly followed by
> state courts, and applied to the majority of similar claims.    This rule applies
> to state court judgments on both substantive and procedural grounds.

*Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).    The last reasoned state-court ruling is used to make this determination.    *Ylst v. Nunnemaker*, 501 U.S. 797, 803–05, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

In the last reasoned state-court judgment, the Louisiana Supreme Court clearly and expressly rejected Ficher's claim on state-law procedural grounds, finding the claim untimely pursuant to Louisiana Code of Criminal Procedure article 930.8 and *State ex rel. Glover v. State*, 93-2330 (La. 9/5/95), 660 So. 2d 1189.[58]

Article 930.8 sets forth the limitations period for filing applications for post-conviction relief, while the *Glover* decision held that an appellate court is not precluded from denying relief pursuant to article 930.8 even if the lower court did not consider timeliness. It is well-settled that article 930.8 qualifies as an independent and adequate state-law procedural ground to support a procedural bar to review.    *Glover*, 128 F.3d at 902; *see also Morris v. Cain*, No. 06–30916, 2008 WL 3876479 (5th Cir. Aug. 20, 2008) (per curiam); *Pineyro v. Cain*, 73 F. App'x 10, 11 (5th Cir. 2003).    The United States Fifth Circuit Court of Appeals has held that denial of relief premised on the untimeliness of a claim under article 930.8 "is sufficient to fulfill the independence requirement" of the procedural default doctrine, and that article 930.8 is strictly and regularly followed and evenhandedly applied by Louisiana courts to the vast majority of similar claims.    *Glover*, 128 F.3d at 902.

---

[58]  *State ex rel. Charles Fischer, Jr. v. State*, 2013-KH-2543 (La. 6/20/14), 141 So.3d 279; ECF No. 57-9 at 1.

Because the last reasoned decision by the Louisiana Supreme Court rested expressly upon an independent and adequate state rule of procedural default, this Court may not review the instant claim unless petitioner demonstrates cause for the default and actual prejudice or a fundamental miscarriage of justice.

In order to overcome the procedural-default doctrine, Ficher must demonstrate "cause" for the default and prejudice resulting from the default, or show that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice. *Amos v. Scott*, 61 F.3d at 339 (citations omitted). To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Here, Ficher has made no effort to establish cause for his failure to pursue the defaulted claim in the state courts. His own ignorance of procedural rules for filing does not suffice as cause. *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992). This Court's review of the record does not support a finding that any factor external to the defense prevented him from raising the claim in a procedurally proper manner or that any action or inaction on the part of the State prevented him from doing so. "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n. 43).

A petitioner may avoid a procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, a petitioner must

provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Glover*, 128 F.3d at 902.    To satisfy this standard, a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).    To show factual innocence, the petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.    *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *see Nobles v. Johnson*, 127 F.3d 409, 423 n. 33 (5th Cir. 1997) (actual-innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").

> However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

> Here, Ficher fails to provide any compelling grounds for such a claim.    He suggests that he is actually innocent because prosecution witness, Robert Young, offered inconsistent and therefore arguably "unreliable" testimony at trial.    His sufficiency of the evidence claim, as explained in more detail later in this report, however, does not entitle him to relief. As "new" evidence in support of the actual innocence claim, he points to an affidavit he

obtained from an uncalled defense witness, Kimmie Alexander, whom he claims he disclosed to defense counsel in advance of trial.    In her affidavit, she states she saw someone other than Ficher shoot the victim.[59]

First, the authenticity of Alexander's affidavit is questionable.    The notary signature is illegible, there is no notary stamp or seal, no notary number, and no identification of the state and parish/county under which the notary is commissioned.[60]    Thus, the Court cannot determine that identity of the notary.    Further, the jurat merely states, "Sworn to and subscribed to before me this 1 day of April 2003."[61]    The affidavit was not made under penalty of perjury, and there is no indication whether the notary verified Alexander's identity.[62]    Additionally, the affidavit provides no reason why Alexander waited more than 10 years to commit her statement to writing.

Second, Alexander's affidavit, which is dated April 1, 2003, nearly 11 years after the murder and more than 10 years after the trial, is not reliable.    *See Komolafe v. Quarterman,* 246 F. App'x 270, 272 (5th Cir. 2007) (credibility of affidavit was mitigated by the fact that it was submitted eight years after the petitioner's conviction); *Strayhorn v. Booker*, 718 F. Supp. 2d 846, 874 (E.D. Mich. 2010) (noting that "[l]ong-delayed affidavits" are "treated with a fair degree of skepticism").    Further, Alexander's affidavit is suspect as she is an admitted long-time friend (or at least an acquaintance) of Ficher.    *See, e.g.*, *Milton v. Secretary, Department of Corrections*, 347 F. App'x 528, 531 (11th Cir. 2009) (finding that the reliability of affidavits

---

[59]  ECF No. 1-1 at 2.

[60]  *See id.*

[61]  *See id.*

[62]  *See id.*

executed by friends or fellow inmates is suspect); *see generally House v. Bell*, 547 U.S. 518, 552 (2006) (holding that evidence from eyewitnesses with "no evident motive to lie ... has more probative value than ... testimony from ... friends or relations of the accused").

There is another problem with the evidence upon which Ficher relies: it is not sufficiently compelling to support a tenable actual-innocence claim.    The United States Fifth Circuit Court of Appeals has explained:

> This exception's demanding standard requires evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.    The standard is seldom met.

> An actual-innocence claim is only established when it is shown that, in the light of newly-discovered evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. Therefore, a credible claim must be supported by new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Actual innocence is then demonstrated only when the court scrutinizes the likely impact on reasonable jurors of the overall, newly supplemented record to conclude that, in the light of all evidence – both the evidence presented at trial and that newly discovered – no juror, acting reasonably, would have voted to find petitioner guilty beyond a reasonable doubt.

*Floyd v. Vannoy*, 894 F.3d 143, 154-55 (5th Cir. 2018) (citations, quotation marks, and brackets omitted).

The evidence upon which Ficher relies is not of that caliber.    While it is not wholly insubstantial, it still in no way establishes that Ficher did not commit this crime.    At best, it might have given rise to reasonable doubt in the minds of some jurors.    But that is not enough: "The meaning of actual innocence ... does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."    *Schlup*, 513 U.S. at 329; *accord Bosely v. Cain*, 409 F.3d 657, 665 (5th Cir. 2005) ("At best, [petitioner]'s new evidence shows that a reasonable

doubt could have been found to exist; it fails, however, to satisfy his burden of showing that no reasonable juror would have found him guilty."); *Crayton v. Cain*, Civil Action No. 02-2162, 2013 WL 5305673, at *5 (E.D. La. Sept. 19, 2013) ("[A] petitioner does not make a colorable 'actual innocence' claim simply by showing that, in light of his new evidence, his guilt is questionable or that reasonable doubt is conceivable." (quotation marks omitted)).

Thus, Ficher has failed to overcome the procedural bar to his prosecutorial misconduct claim, and the foregoing claim should be dismissed with prejudice as procedurally barred.

*Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a State court shall be presumed to be correct.    The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States." 28 U.S.C. § 2254(d)(1).

The " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405B06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Id.* (emphasis added); *see also*

*Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The AEDPA's deferential standard of review under Section 2254(d) and *Williams*, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts.    28 U.S.C. § 2254(d).    With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply.    *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).    Instead, the federal courts review those claims under pre-AEDPA *de novo* standards of review.    *Id.* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

*Analysis*

**A.    Sufficiency of the Evidence**

Ficher claims that the evidence was insufficient to support his conviction.    He argues that Young was impeached at trial by the contradictory testimony he gave at the suppression hearing.

In the last reasoned opinion on direct appeal, the Louisiana Fourth Circuit rejected Ficher's claim of insufficient evidence as follows:

> The defendant also argues that the evidence was insufficient to support the jury's verdict.    He points out that state witness Robert Young's credibility at trial was impeached by his contrary testimony given at the motion to suppress hearing.
>
> Young gave a statement to police several hours after the shooting incident. At that time, he told police that he had seen the defendant shoot the victim with a shotgun.    Young initialed each page of the statement and signed it.

At the suppression hearing on march 2, 21993, Young denied seeing the shooting, insisted that he had not independently selected the defendant's photograph from the line-up.    Detective Anthony Caprerra[3] testified on March 2, 1993, that Young had independently selected the defendant's photograph from the line-up.    Officer Wayne Rumore, the police officer who took Young's statement, testified at the hearing on April 13, 1993.    He stated that Young had voluntarily given the statement and denied coercing or threatening the witness in any manner.    At trial, Young testified that he saw the defendant shoot the victim with a shotgun, but Young admitted that he testified different at the motion to suppress hearing on March 2, 1993. Young admitted that he has a conviction for possession of cocaine and that he was then serving a sentence for possession of heroin.    He insisted that, though he lied at the suppression hearing, he told the truth in his statement given to police several hours after the shooting and that he was telling the truth to the jury.

[3] The witness's name is also spelled "Caprerrer" in the record.

Even if the defense impeached Young's credibility, the state introduced other evidence which was sufficient to support the jury's verdict.    Dr. Garcia testified that the victim was shot three times with a shotgun at close range. Burrell stated to the police and testified at trial that he saw the defendant shoot Kevin Smith with a shotgun.    Considering that Burrell's statement that Smith and he sold drugs was an admission against his own interest, the jury chose to believe his testimony regarding the shooting incident rather than the testimony of the defendant.    Upon this evidence, viewed in a light most favorable to the prosecution, any rational jury could have found beyond a reasonable doubt that the state met its burden of proving pursuant to La.R.S. 14:30.1 that the defendant murdered the victim with the specific intent to kill or to inflict great bodily harm.    See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).    The defendant was not deprived of a fair trial.[63]

As noted by the Louisiana Fourth Circuit, *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the applicable framework for analyzing a sufficiency claim.    The *Jackson* standard requires a determination regarding whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.    *Jackson*, 443 U.S. at 319;

---

[63] *State v. Fisher,* 94-KA-0191 (La. App. 4 Cir. 1/19/95), 648 So. 2d 52 (Table in Westlaw); ECF No. 57-2 at 7-8.

*Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).[64]    Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.    *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n. 16).    The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.    *See McDaniel v. Brown*, 558 U.S. 120, 131-34 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir.2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (quoting *Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.    *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").    Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.    *Ramirez v.*

---

[64] Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does not apply in federal habeas corpus proceedings; in these proceedings, only the *Jackson* standard need be satisfied, even if state law would impose a more demanding standard of proof.    *Foy v. Donnelly*, 959 F.2d 1307, 1314 n. 9 (5th Cir. 1992); *Higgins v. Cain*, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n. 38 (E.D. La. Mar. 8, 2010), *aff'd*, 434 F. App'x 405 (5th Cir. 2011); *Williams v. Cain*, Civ. Action No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), *aff'd*, 408 F. App'x 817 (5th Cir. 2011); *Davis v. Cain*, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); *Wade v. Cain*, Civ. Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J. on July 3, 2008), *aff'd*, 372 F. App'x 549 (5th Cir. Apr. 9, 2010); *see also Coleman v. Johnson*, 566 U.S. 650, 655 (2012) ("Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

*Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.    *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' "    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis added)).

A claim of insufficient evidence presents a mixed question of law and fact.    *Perez*, 529 F.3d at 594; *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir.1995).    Therefore, this Court must defer to the state court's decision rejecting the insufficiency claim unless Ficher shows that the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

Ficher was charged with and convicted of second-degree murder.    Second-degree murder is defined in relevant part by Louisiana law as "the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm."    La. Rev. Stat. § 14:30.1(A)(1).    The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act."    La. Rev. Stat. § 14:10(1).    Under Louisiana law, intent need not be proven directly, but may be inferred from the actions of the defendant and the circumstances surrounding those actions.    *State v. Sharlhorne*, No. KA881872 (La. App. 1 Cir. 12/19/89), 554 So. 2d 1317, 1321; *State v. Tate*, 2001–KA–1658 (La. 5/20/03), 851 So. 2d 921, 930 (citing *State v. Brooks*, 86–KA–1559 (La. 4/6/87), 505 So. 2d 714, 717).    Specific intent to

kill can also be implied by the intentional use of a deadly weapon, such as a knife or gun. *State v. Collins*, 2009 KA 2102 (La. App. 1 Cir. 6/28/10), 43 So.3d 244, 251 (citing *State v. Brunet*, 95 KA 0340 (La. App. 1 Cir. 4/30/96), 674 So. 2d 344, 349).

Ficher does not specifically contest the sufficiency of the proof related to the essential statutory elements of the offenses for which he was convicted, but rather contends that the State failed to prove beyond a reasonable doubt his identity as the perpetrator.

Under Louisiana law, the state is required to prove the identity of the perpetrator in addition to the elements of the crime. *State v. Draughn*, 2005-KA-1825 (La. 1/17/07), 950 So. 2d 583, 593; *State v. Thomas*, 15-KA-759 (La. App. 5 Cir. 5/12/16), 192 So. 3d 291, 303; *State v. Ingram*, 04-KA-551 (La. App. 5 Cir. 10/26/04), 888 So.2d 923, 926. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification. *State v. Vasquez*, 98-KA-898 (La. App. 5 Cir. 2/10/99), 729 So.2d 65, 69. Discrepancies in witness testimony go to credibility, which is a matter left to the judgment of the trier of fact, and an appellate court cannot reassess a credibility determination. *State v. Thomas*, 08-KA-813 (La. App. 5 Cir. 4/28/08), 13 So. 3d 603, 607.

The relevant evidence presented at trial was more than sufficient to establish, and Ficher does not contest, that the victim died after being shot multiple times. To prove Ficher's identity as the perpetrator of the crimes, the State introduced evidence from multiple witnesses.

Officer Caprerra testified that, upon arriving at the scene, he received information that the perpetrator was a black male named Charles.[65] He further testified that Detectives

---

[65] ECF No. 57-2 at 181, Trial Transcript, 10/26/93.

Rumor and Ronquillo obtained statements from Arland Burrell and Robert Young during which the witnesses identified the perpetrator as Charles Ficher.[66]    Caprerra testified that he prepared photographic line ups and presented them to Burrell and Young, who both identified Ficher as they saw shoot the victim.[67]

Arland Burrell testified that he was in the victim's car when he saw Ficher kill the victim.[68]    He explained that he saw Ficher shoot the victim with a 12-guage shotgun.[69] Afterwards, Burrell spoke to the police and identified Ficher from a photographic line-up.[70] Burrell testified that he was positive that Ficher was the perpetrator.[71]

Robert Young testified that he saw Ficher shoot the victim.[72]    He further testified that he recalled picking Ficher out of a photographic line up.[73]    Young admitted on cross-examination that, at the suppression hearing, he testified that he did not witness the shooting and that he went to the police station simply to support Burrell.[74]    Young testified that he told the police that he saw Ficher pump several shotgun shots into the victim's body.[75]

First, Burrell's testimony alone was sufficient to support the conviction.    A single,

---

[66]  *Id.* at 181

[67]  *Id.* at 182-85.

[68]  *Id.* at 203, 206.

[69]  *Id.* at 204.

[70]  *Id.* at 205.

[71]  *Id.* at 210.

[72]  *Id.* at 200-02.

[73]  *Id.* at 200, 202.

[74]  *Id.* at 202.

[75]  *Id.* at 202.

uncorroborated eyewitness identification, if found credible by the trier of fact, is sufficient to prove identity and support a conviction under federal law.    *United States v. King*, 703 F.2d 119, 125 (5th Cir. 1983); *accord Davis v. Cain*, Civ. Action No. 15-6652, 2016 WL 4537915, at *7 (E.D. La. May 24, 2016), *adopted*, 2016 WL 4529877 (E.D. La. Aug. 30, 2016); *Colbert v. Cain*, Civ. Action No. 14-2472, 2016 WL 4186551, at *11 (E.D. La. Apr. 12, 2016), *adopted*, 2016 WL 4161257 (E.D. La. Aug. 5, 2016); *Phillips v. Cain*, Civ. Action No. 11-2725, 2012 WL 2564926, at *13 (E.D. La. Apr. 11, 2012), *adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012).

Further, Ficher's legal insufficiency argument focuses on credibility.    He argues that Young testified at the suppression hearing that he did not witness the shooting.[76]    Young further testified at that hearing that he did not recognize the statement given to police and that he did not tell the police anything that was in the written statement.[77]    He further claimed that, while the police showed him photographs, he did not identify anyone.[78] Young claimed that he signed the back of Ficher's photograph because the police told him to do so.[79]    However, these circumstances were brought out by counsel on cross-examination and subject to scrutiny by the jury when considering the witness's credibility[80] Additionally, defense counsel called Young as a witness in the defense case.[81]    At that time,

---

[76]  *See* ECF 57-2 at 38, 41,48-49, 53, Suppression Hearing Transcript, 3/2/93.

[77]  *Id.* at 43, 45, 51.

[78]  *Id.* at 46.

[79]  *Id.* at 46-47.

[80]  ECF 57-2 at 201-02, Trial Transcript, 10/26/93.

[81]  *Id.* at 213-22.

Young admitted again that he had previously testified at a suppression hearing, and that his testimony he provided at the hearing that he did not see the murder and that he was told to sign a statement was not true.[82]    Young claimed that his trial testimony that he saw Ficher commit the murder was the truth.[83]    The jury obviously found the testimony, from either Burrell or Young or both, that Ficher was the perpetrator to be true.

The *Jackson* standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.    *Jackson*, 443 U.S. at 319.    To the extent his sufficiency claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief.    *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez*, 398 F.3d at 695 ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, Civ. Action No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); *Phillips v. Cain*, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), *adopted*, 2012 WL 2565025, at *1 (E.D. La. July 2, 2012); *Picou v. Cain*, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).    The jury was entitled to resolve any inconsistencies or discrepancies in the evidence and testimony against Ficher, and apparently did so.    Ficher asks the Court to substitute its own analysis for that of the jurors in this case and reach a different conclusion. However, a federal court is not at liberty to second-guess the weight afforded the evidence

---

[82]  *Id.* at 213-17, 220, 222.

[83]  *Id.* at 222.

or the jury's credibility determinations.

Here, the evidence, when viewed in the light most favorable to the prosecution, could permit any rational trier of fact to find beyond a reasonable doubt that Ficher was the perpetrator who shot and killed the victim.    Ficher is not entitled to relief on this claim.

### B.  *Ineffective Assistance of Counsel*

Ficher next claims that he was denied effective assistance of counsel when his attorney failed to file a motion to quash the indictment, call Alexander to testify, and request a limiting instruction.

Ficher raised his claims of ineffective assistance of counsel for failing to call Kimmie Alexander and request a limiting instruction in his first application for post-conviction relief.[84]    The state district court found that Ficher had "several witnesses testify on his behalf and there is no evidence of ineffective assistance of counsel."[85]    The Louisiana Fourth Circuit considered the claims and found that he was not entitled to relief.[86]    The Louisiana Supreme Court denied relief without assigning reasons.[87]

### 1.    Effective Assistance of Counsel

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.    Specifically, a petitioner seeking relief must demonstrate both deficient performance by counsel and that the deficient performance prejudiced his defense.    *Strickland*, 466 U.S. at 697.    A petitioner bears the burden of

---

[84]  ECF 57-3 at 28, 32, Uniform Application for Post-Conviction Relief, 10/22/96.

[85]  ECF No. 57-1 at 27, Judgment on Motion for Post-Conviction Relief, 3/9/98.

[86]  ECF No. 57-3 at 1.**

[87]  *State ex rel. Ficher*, 882 So. 2d at 564; ECF No. 57-7 at 2.

proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e., deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, a reasonable probability is "a probability

sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at. 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and the petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and might be considered sound trial strategy. *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations and quotation marks omitted).

Accordingly, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 563 U.S. 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009) ). The federal courts must look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id*. (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 129 S.Ct. at 1419 n. 2). Furthermore, the court will "indulge a strong

presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689–90); *see also Matheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

Because the state courts rejected two of Ficher's ineffective-assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision as to those claims unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

## 2. Ineffective Assistance of Counsel in Failing in File a Motion to Quash

Ficher claims his counsel was ineffective in failing to file a motion to quash the indictment based on the grounds that the selection of the grand jury was unconstitutional. He claims that the grand jury was selected pursuant to statutes applicable only to Orleans Parish which allow the state district judges to personally select the grand jury panel and the foreperson.

Ten years after Ficher was convicted, in *State v. Dilosa*, 848 So.2d 546, 551 (La. 2003), the Louisiana Supreme Court held that article 413(C) of the Louisiana Code of Criminal Procedure and Louisiana Revised Statute section 15:114, which governed the selection

process for grand jury panels and forepersons in Orleans Parish at the time and established a unique method for selection of the grand jury venire and the foreperson, violated the Louisiana constitutional prohibition against the passage of local laws concerning criminal actions.

Initially, Ficher was charged by grand jury indictment in 1992.[88]    As noted, the Louisiana Supreme Court did not find the law regarding grand jury empanelment in Orleans Parish unconstitutional until 2003, more than 10 years later.    Thus, at the time Ficher was indicted, there was no basis for counsel to challenge the grand jury selection process.[89] *Womak-Grey v. Warden, La. Correctional Institute for Women*, No. 08-3956, 2010 WL 3473081, at *9 (E.D. La. April 14, 2010), *adopted*, 2010 WL 3473811 (E.D. La. Aug. 27, 2010).

Further, Ficher fails to adduce any evidence that race or gender discrimination adversely affected the selection of the grand jury that indicted him.    Ficher has not attached to his petition any supporting documentary evidence.    While he claims that "[s]tatistical data proves that judges excluded different classes of citizens based on race and/or gender,"[90] he does not provide any such data.    Regardless, reliance on statistics from cases other than his own is insufficient to prove the grand jury in his case was unconstitutionally empaneled. *Griffin v. Cain*, Civ. Action No. 08-5098, 2010 WL 4365844, at *9 (E.D. La. Sept. 23, 2010), *adopted*, 2010 WL 4340787 (E.D. La. Oct. 25, 2010), *aff'd*, *Griffin v. Cain*, 470 F. App'x 403 (5th Cir. 2012).    Therefore, Ficher's claim fails because "[c]ounsel is not required by the Sixth

---

[88]  ECF No. 57-1 at 21-22, Bill of Indictment, 11/12/92.

[89]  In fact, in 1981, the Louisiana Supreme Court rejected a claim that La. Code Crim .P. arts. 412, 413, and 414, and La. Rev Stat. §. 15:114 relating to the selection of grand jurors in Orleans Parish were unconstitutional.    *State v. Motts*, 395 So. 2d 1337 (La. 1981).

[90]  ECF No. 1 at 10.

Amendment to file meritless motions." *United States v. Gibso*n, 55 F.3d 173, 179 (5th Cir. 1995); *accord United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

For these reasons, Ficher is not entitled to relief as to this ineffective assistance of counsel claim.

### 3.    Ineffective Assistance of Counsel in Failing to Request a Limiting Instruction

Ficher next claims that his counsel was ineffective in failing to request a limiting instruction regarding the State's impeachment of Young's testimony.    Specifically, Ficher argues that Young perjured himself and that a hearsay statement used to impeach a witness, or prior inconsistent statement, is not substantive evidence and cannot be used for the truth of the matter asserted.

The State argues that a jury instruction that a witness perjured himself would be wholly improper and a request for such an instruction would have been denied.    It further argues that Ficher would have benefited from the jury believing that Young's prior inconsistent statement could be considered as substantive evidence.    Finally, the State argues that defense counsel impeached Young both on cross-examination and when he called him as a defense witness.

Certainly, given that Young had not been convicted of perjury, an instruction to the jury to the effect that Young had committed perjury would not have been appropriate and a request for such an instruction would not have been granted.    Counsel does not act

deficiently when he fails to urge a meritless or baseless position.    *See Clark v. Thaler*, 673 F.3d 410, 429 (5th Cir.2012) ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance") (quoting *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir.1997)); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir.2007) (" '[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.' ") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994)); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir.1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).    Thus, Ficher fails to show that his counsel was ineffective in failing to request an instruction regarding perjury or any resulting prejudice.

Turning to Ficher's claim relating to prior inconsistent statements by Young, Louisiana's Code of Evidence provides that "extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness."    La. Code Evid. art. 607(D)(2).    Prior inconsistent statements, however, do not constitute substantive evidence.    *State v. Allien*, No. 61979 (La. 12/15/78), 366 So. 2d 1308, 1311.    A defendant must request a limiting instruction to that effect or "suffer the risk that the jury will credit the state's case with supplemental evidence which ought not be substantively considered."    *State v. Laprime*, 82-KA-1021 (La. 9/2/83), 437 So. 2d 1124, 1227 (citations omitted).

In the State's case, Young testified on direct examination that he saw Ficher shoot and kill the victim.[91]    Defense counsel impeached that testimony on cross-examination with the testimony Young provided at the suppression hearing that he did not witness the murder

---

[91]   ECF No. 57-2 at 200, Trial Transcript, 10/26/93.

and did not previously identify Ficher as the shooter.[92]   On re-direct, Young testified that he gave a statement to police and identified Ficher as the shooter from a photographic line up.[93] Defense counsel called Young as a witness in the defense case.[94]   Young again testified that he saw Ficher shoot the victim.[95]   He testified that his testimony at the suppression hearing was false.[96]   On cross-examination, Young testified that everything he said in his statement to police on the day of the murder, including that he saw Ficher stand over the victim's body and pump the shotgun to reload it, was the truth.[97]   He further reiterated that his testimony at the suppression hearing was untruthful.[98]   On re-direct, he again confirmed that his suppression hearing testimony was not truthful.[99]

Young candidly admitted that his prior inconsistent statements made at the suppression hearing that he did not witness the murder and that he signed the written statement to police and the back of Ficher's photograph because he was told to do so was false.   There was no beneficially strategic reason to request a limiting instruction. Further, had a limiting instruction been given, the jury would have been restricted from considering Young's suppression hearing testimony that he did not witness the murder as

---

[92]  *Id.* at 202.

[93]  *Id.*

[94]  *Id.* at 212.

[95]  *Id.* at 214-15.

[96]  *Id.* at 214-17,

[97]  *Id.* at 218-19.

[98]  *Id.* at 220.

[99]  *Id.* at 222.

substantive evidence.    That would not have been beneficial to the defense.

Even assuming Ficher can show that his trial counsel was ineffective for failing to request a limiting instruction explaining that the prior inconsistent statement was only admissible for impeachment purposes, Ficher cannot establish prejudice because there was other ample evidence of record to convict Ficher of second-degree murder, including the eyewitness testimony of Burrell, who never wavered from his original statement to police that Ficher was the perpetrator.   *See Mason v. Vannoy*, Case No. 5:16-cv-570, 2017 WL 773149, at *14 (W.D. La. March 1, 2017) (citation omitted), *adopted*, 2018 WL 1001259 (W.D. La. Feb,. 21, 2018).

In summary, Ficher has not shown that the state-court decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.    He is not entitled to relief as to this claim.

### 4. Ineffective Assistance of Counsel in Failing to Call Alexander to Testify

Finally, Ficher claims that his trial counsel was ineffective in failing to call Kimmie Alexander to testify at trial.

With regard to the failure to subpoena the witnesses to testify at trial, the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.    For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.    This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); *accord Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, Ficher presents the April 1, 2003, affidavit of Kimmie Alexander wherein she states that she witnessed Smith's murder on May 13, 1992 while looking out her back window.[100]    Alexander states:

> I saw the man come from behind the bushes with a long black gun in front of the 3800 block of Martin Luther King.    He began shooting as he came from out of the bushes.    He kept firing and pumping the gun until he caught up with Kevien [sic].    When he stopped shooting, he ran right in front my house and then into the Thalia Courtyard.    The man's face was not familiar, however, the man was not Charles Ficher who I've known to stay around that area for some years.    After finding out later that Charles Ficher was being charged with that same murder, I volunteered to tell what I saw after getting in touch with his people.    I was told I would be subpoenaed by his lawyer but I was never subpoenaed.[101]

Initially, as previously explained in detail, it is questionable whether the affidavit is authentic.    Second, while Alexander states that she was told she would be subpoenaed, Alexander does not expressly state that she was available to testify at trial and would have done so if called.    Such statements are required.    *See Vasquez v. Thaler*, 505 F. App'x 319, 327 (5th Cir. 2013); *Gray v. Epps*, 616 F.3d 436, 443-44 (5th Cir. 2010); *Woodfox v. Cain*, 609

---

[100]    ECF No. 1-1 at 2.

[101]    *Id.*

F.3d 774, 808 (5th Cir. 2010) (observing that the requirement that an uncalled witness state that he was available to testify at trial and would have done so "is not a matter of mere formalism"); *Day v. Quarterman*, 566 F.3d 527, 538-39 (5th Cir. 2009).

Third, the affidavit does not definitively prove that defense counsel was aware of Alexander's existence, let alone that Alexander saw the perpetrator of the murder, and that she believed that the perpetrator was someone other than Ficher.    Rather, given the wording of her affidavit, it is unclear whether Alexander actually spoke with defense counsel, or whether she simply volunteered to get in touch with Ficher's "people," but did not actually do so.    Her affidavit is further ambiguous as to who allegedly told her that she would be subpoenaed.

Fourth, there is no evidence, other than Ficher's self-serving statement, that the defense knew or should have known about Kimmie Alexander.    The record shows that Ficher vacillated between witness names, alternatively providing the names Elmegia Alexander and Kimmie Alexander in his applications for post-conviction relief, and did not actually provide any specific information about the content of the proposed testimony for nearly seven years after he first filed an application for post-conviction relief.[102]    In 1996 and 1998, years after the trial, Ficher merely stated that the witness (again, either Elmegia Alexander or Kimmie Alexander) would support his version of the facts and testify that he was not the perpetrator.[103]    There was no allegation made by Ficher that Kimmie Alexander

---

[102]  *See* ECF No. 57-3 at 28, 33-35, Uniform Application for Post-Conviction Relief, 10/22/96 (indicating that Kimmie Alexander would testify that he was not the perpetrator and "would support his version of the facts"); ECF No. 57-1 at 52, 56-58, 66, 70-72, Uniform Application for Post-Conviction Relief, undated (file stamped 4/8/98) (indicating that Elmegia Alexander would testify that he was not the perpetrator and "would support his version of the facts"); *id.* at 46, Uniform Application for Post-Conviction Relief, 4/30/98 (file stamped 6/19/98) (indicating Kimmie Alexander).

[103]  *Id.*; ECF No. 57-1 at 52, 56-58, 66, 70-72, Uniform Application for Post-Conviction Relief, undated

actually witnessed the murder and saw the perpetrator until her April 2003 affidavit, more than ten years after the murder.    Thus, Ficher has not shown that his counsel had any actual knowledge of Kimmie Alexander.    "Counsel cannot be expected to present that which was not available to him."    *Bradford v. Cain*, No. 07-3885, 2008 WL 4266761, at * 15 (E.D. La. Sept. 12, 2008).

Finally, given that defense counsel presented the testimony of other defense witnesses, it is illogical to conclude that he would not have called Kimmie Alexander without good reason had he been aware of her existence and her proposed testimony.    Specifically, the defense presented the testimony of Alecia Boutte, Ficher's girlfriend, who claimed that Ficher was home with her on the day of the murder.[104]    Ficher's mother, Beula Ficher, similarly testified that Ficher was living with Boutte at the time of the murder.[105]    Ficher testified in his own defense that, prior to the shooting, he saw the victim selling drugs near his mother's house and asked him not to do so.[106]    He claimed that he never got into a confrontation with the victim and did not shoot him.[107]    Ficher claimed to be at Boutte's home at the time of the shooting.[108]    He denied fleeing to Georgia because he was wanted for the second-degree murder of the victim.[109]    He did not offer any testimony that

---

(file stamped 4/8/98); *id.* at 46, Uniform Application for Post-Conviction Relief, 4/30/98 (file stamped 6/19/98).

[104]  ECF No. 224-225, Trial Transcript, 10/26/93.

[105]  *Id.* at 227.

[106]  *Id.* at 229-30.

[107]  *Id.* at 230, 234.

[108]  *Id.* at 230, 234.

[109]  *Id.* at 232

Alexander had witnessed the murder.    Nor did Ficher object on the record when defense counsel rested the case without calling Alexander.[110]

In summary, Ficher has failed to show that his counsel was ineffective in failing to call Kimmie Alexander.    The state-court decision was not contrary to, or an unreasonable application of, *Strickland*.    Ficher is not entitled to relief as to this claim.

## RECOMMENDATION

**IT IS RECOMMENDED** that Charles J. Ficher, Jr.'s application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[111]

New Orleans, Louisiana, this ___23rd___ day of _____October_____, 2023.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[110] *Id.* at 235.

[111] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.