**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CHARLES F. FICHER, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2281** |
| **JASON KENT, WARDEN** | **SECTION: "E" (5)** |

**ORDER AND REASONS**

Before the Court is a Report and Recommendation[1] issued by Magistrate Judge Michael B. North ("Magistrate Judge"), recommending Petitioner Charles Ficher, Jr.'s ("Petitioner") Petition for Writ of Habeas Corpus[2] (the "Petition") be dismissed with prejudice.[3] Petitioner timely objected to the Magistrate Judge's Report and Recommendation.[4] For the reasons below, the Court **ADOPTS** the Report and Recommendation as its own and **DENIES** Petitioner's application for relief.

**BACKGROUND**

## I.   Procedural background

On November 12, 1992, an Orleans Parish Grand Jury indicted Petitioner on one count of second degree murder, in violation of La. R.S. 14:30.1.[5] A jury found Petitioner guilty on October 26, 1993.[6] Petitioner moved for a new trial, but the court denied this motion on November 9, 1993.[7] The same day, the trial court sentenced Petitioner to life imprisonment without the possibility of parole, probation, or suspension of sentence.[8]

---

[1] R. Doc. 59.
[2] R. Doc. 1.
[3] R. Doc. 59.
[4] R. Doc. 60.
[5] R. Doc. 57-1 at pp. 21-22.
[6] *Id.* at p. 122; R. Doc. 57-2 at pp. 77-78.
[7] R. Doc. 57-1 at p. 6.
[8] *Id.*

The Louisiana Fourth Circuit Court of Appeal ("Louisiana Fourth Circuit") affirmed[9] Petitioner's conviction and sentence and the Louisiana Supreme Court denied Petitioner's writ application.[10]

On October 22, 1996, Petitioner filed an application for post-conviction relief ("PCR Motion") in state district court.[11] Petitioner first argued ineffective assistance of counsel for his trial counsel's failure to call Kimmie Alexander ("Alexander") as a witness after Petitioner informed his trial counsel that Alexander would support Petitioner's claimed innocence.[12] Second, Petitioner argued it was error for his trial counsel not to request a limiting jury instruction on the use of a witness's prior inconsistent statement.[13] The state district court denied Petitioner's PCR Motion on March 9, 1998.[14]

Petitioner filed a second PCR Motion on June 19, 1998.[15] This PCR Motion was nearly identical to Petitioner's first, except that it refers to the witness that Petitioner's trial counsel did not call as Elmegio Alexander rather than as Kimmie Alexander.[16] On April 8, 2003, Petitioner then sought leave to change the name in his PCR Motion from Elmegio Alexander to Kimmie Alexander.[17]

On May 28, 2003, Petitioner filed an application for writ of mandamus ("Mandamus Application") in the Louisiana Fourth Circuit.[18] In this application,

---

[9] On direct review, Petitioner raised a prosecutorial misconduct argument. R. Doc. 57-2 at pp. 6-7. The Louisiana Fourth Circuit "declined[d] to consider th[e] issue on appeal" and provided Petitioner "may raise his claim in an application for post-conviction relief." *Id.*
[10] *State v. Fisher*, 94-0191 (La. App. 4 Cir. 1/19/95), 648 So. 2d 52, *writ denied*, 95-0476 (La. 6/16/95), 655 So. 2d 341; R. Doc. 57-2 at pp. 2-8.
[11] R. Doc. 57-3 at pp. 24-38.
[12] *Id.* at pp. 33-35.
[13] *Id.* at pp. 35-37.
[14] R. Doc. 57-1 at p. 27.
[15] *Id.* at pp. 42-47.
[16] *Id.* at pp. 55-61.
[17] R. Doc. 57-3 at p. 10.
[18] *Id.* at pp. 2-6.

Petitioner asked the Louisiana Fourth Circuit to compel the state district court to rule on his second PCR Motion.[19] This Mandamus Application referenced the uncalled witness as Kimmie Alexander and included an affidavit signed by Kimmie Alexander as an exhibit.[20]

On June 23, 2003, the Louisiana Fourth Circuit issued a decision denying Petitioner's second PCR Motion and, accordingly, denying Petitioner's Mandamus Application as moot.[21] This led Petitioner to file another Mandamus Application with the Louisiana Supreme Court.[22] The Louisiana Supreme Court denied Petitioner's second Mandamus Application on August 20, 2004.[23]

Petitioner filed a third Mandamus Application in the Louisiana Fourth Circuit on September 1, 2004 claiming the state district court still had not ruled on his second PCR Motion.[24] The Louisiana Fourth Circuit denied this third Mandamus Application as "repetitive."[25]

On January 31, 2006, Petitioner filed his first federal habeas corpus petition in this Court.[26] This Court held the first petition contained both exhausted and unexhausted claims and thus dismissed the petition without prejudice for failure to exhaust on November 19, 2008.[27] Petitioner's unexhausted claims were a claim based on prosecutorial misconduct and a claim that Petitioner's jury was unconstitutionally empaneled.[28]

---

[19] *Id.* at pp. 2-6.
[20] *Id.* at pp. 2-9.
[21] R. Doc. 57-7 at p. 9.
[22] *Id.* at pp. 3-8.
[23] *Id.* at p. 1.
[24] R. Doc. 57-4 at pp. 2-5.
[25] *Id.* at p. 1.
[26] *Ficher v. Cain*, No. 05-6373, R. Doc. 3 (E.D. La. Jan. 31, 2006).
[27] *Ficher*, No. 05-6373, R. Doc. 14 (E.D. La. Nov. 19, 2008).
[28] *Ficher*, No. 05-6373, R. Doc. 12 at pp. 8-14 (E.D. La. Oct. 20, 2008); *Ficher*, No. 05-6373, R. Doc. 14 (E.D. La. Nov. 19, 2008).

Petitioner then filed a third PCR Motion on March 18, 2013.[29] First, Petitioner argued prosecutorial misconduct because the prosecutor allegedly misrepresented himself as a defense attorney to Petitioner and then questioned Petitioner on his criminal case.[30] Next, Petitioner re-asserted the arguments he made in his first PCR Motion, which included: ineffective assistance of counsel for (1) not calling witness Alexander and (2) failing to request a limiting instruction regarding the state's impeachment of Robert Young ("Young").[31] Last, Petitioner argued ineffective assistance of counsel for failure to file a motion to quash the indictment on grounds that the grand jury foreman was unconstitutionally selected.[32] The state district court denied this PCR Motion.[33] Petitioner then filed an application for supervisory writs in the Louisiana Fourth Circuit.[34] The Louisiana Fourth Circuit, and then the Louisiana Supreme Court after Petitioner filed another application for supervisory writs, both found Petitioner's claims time-barred under Louisiana Code of Criminal Procedure article 930.8.[35]

On October 2, 2014 Petitioner filed the Petition now before the Court.[36] Petitioner asserts the following grounds for relief:

    i.    Prosecutorial misconduct
    ii.    Insufficiency of evidence
    iii.    Ineffective assistance of counsel for failing to present a witness
    iv.    Ineffective assistance of counsel for failing to request a limiting instruction concerning proper use of prior inconsistent statements
    v.    Ineffective assistance of counsel for failure to challenge the grand jury indictment through a motion to quash[37]

---

[29] R. Doc. 57-5 at pp. 19-29; R. Doc. 59 at p. 5.
[30] R. Doc. 57-5 at p. 25.
[31] *Id.* at p. 26.
[32] *Id.* at p. 27.
[33] *Id.* at p. 30.
[34] *Id.* at pp. 2-18.
[35] *Id.* at p. 1; R. Doc. 57-9 at p. 1.
[36] R. Doc. 1.
[37] *Id.*

Without objection to the initial Report and Recommendation, this Court dismissed the Petition with prejudice as untimely on November 2, 2017.[38] Petitioner then notified the Court that he did not receive a copy of the Report and Recommendation.[39] Accordingly, the Court allowed Petitioner additional time to file objections.[40] After Petitioner filed objections,[41] the Court re-adopted the Report and Recommendation and dismissed the Petition with prejudice.[42]

Petitioner appealed the dismissal.[43] On appeal, the United States Court of Appeal for the Fifth Circuit vacated this Court's decision because Respondent abandoned its timeliness argument on appeal. The Fifth Circuit remanded the case for a merits analysis.[44] Following the remand, the Magistrate Judge determined this matter could be disposed of without an evidentiary hearing.[45] The Magistrate Judge issued a Report and Recommendation on October 24, 2023 finding each of Petitioner's claims to be either unexhausted, procedurally barred, or meritless.[46] On November 7, 2023, Petitioner filed objections to the Report and Recommendation.[47]

## II.    Factual background

The Louisiana Fourth Circuit summarized the facts of Petitioner's criminal proceeding as follows:

> On May 13, 1992, around noon, Arland Burrell went to pick up Kevin Smith in the Calliope Housing Project in an automobile owned by Smith's mother, Geraldine Johnson. Ms. Johnson lent the Oldsmobile Delta Eighty-Eight to Burrell earlier that day. Burrell was sitting in the driver's seat and

---

[38] R. Doc. 14; R. Doc. 16.
[39] R. Doc. 20; R. Doc. 21.
[40] R. Doc. 21.
[41] R. Doc. 24.
[42] R. Doc. 27.
[43] R. Doc. 30.
[44] *Ficher v. Bickham*, 70 F.4th 257 (5th Cir. 2023).
[45] R. Doc. 59.
[46] *Id.*
[47] R. Doc. 60.

Smith was standing outside the car near the front passenger's seat when Burrell saw the defendant approach the car and shoot Smith with a shotgun. Burrell drove off, but stopped approximately one and a half blocks from the scene of the shooting. Later Burrell identified the defendant's photograph from a photographic line-up. Another witness, Robert Young, testified at trial that he, too, saw the defendant shoot Kevin Smith with a shotgun. Young also selected the defendant's photograph from the line-up. According to Dr. Susan Garcia, an expert in the field of forensic pathology, Smith died as the result of three shotgun blasts, one each to the head, chest and lower back. The defendant was arrested in Dekalb County, Georgia, on July 24, 1992, and extradited to Louisiana on October 24, 1992.

The defendant presented an alibi defense and attempted to impeach the credibility of witness Robert Young. The defendant's girlfriend, Alecia Boutte, testified that the defendant, a senior at Sara T. Reed High School, was the father of her baby and living at her house at the time of the murder. She stated that the defendant was in bed with her when she awoke that day. However, on cross-examination, Ms. Boutte admitted that she did not know what time she woke up. The defendant's mother related that her son was living with Ms. Boutte at the time of the murder. The defendant testified that he knew Smith from the neighborhood and told Smith not to sell drugs in front of his mother's home. The defendant, who was not attending school at the time of the murder, denied killing Smith.[48]

## LEGAL STANDARD

In reviewing the Magistrate Judge's Report and Recommendation, the Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.[49] As to the portions of the report to which Petitioner did not object, the Court need only review those portions to determine whether they are clearly erroneous or contrary to law.[50]

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable

---

[48] R. Doc. 57-2 at pp. 4-5.
[49] *See* 28 U.S.C. § 636(b)(1)(C) (2018) ("[A] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").
[50] *Id.* § 636(b)(1)(A).

determination of the facts in light of the evidence presented in the State court proceeding."[51] A federal court must defer to the decision of the state court on the merits of a pure question of law or a mixed question of law and fact unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[52] A state court's decision is contrary to clearly established federal law if: "(1) the state court applies a rule that contradicts the governing law announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts."[53]

The AEDPA requires that a federal court "accord the state trial court substantial deference."[54] However, the AEDPA's deferential standards of review apply only to claims adjudicated on the merits by the state courts.[55]

## LAW AND ANALYSIS

## I.    Petitioner's prosecutorial misconduct claim is procedurally barred.

The Magistrate Judge held Petitioner's prosecutorial misconduct claim is procedurally barred.[56] Petitioner objected to this finding.[57] Petitioner argued that the procedural bar is inapplicable to him because equitable tolling should apply and because he has demonstrated actual innocence.[58]

---

[51] 28 U.S.C. § 2254(d)(2).
[52] *Id.* § 2254(d)(1).
[53] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).
[54] *Brumfield v. Cain*, 576 U.S. 305, 314 (2015).
[55] 28 U.S.C. § 2254(d); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).
[56] R. Doc. 59 at pp. 10-20.
[57] R. Doc. 60 at pp. 1-9.
[58] *Id.*

A "limit on the scope of federal habeas review is the doctrine of procedural default."[59] "If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the prisoner has procedurally defaulted his federal habeas claim."[60] Procedural default bars a federal court from reviewing the merits of the defaulted claim.[61] In order for a state procedural restriction to bar a federal court's review of the merits, it must be both independent—that is, the state court must "'clearly and expressly' state[] that its judgment rests on a state procedural bar"[62]—and adequate—that is, the "state rule must be 'firmly established and regularly followed.'"[63] The question of adequacy is "itself a question of federal law," but federal courts cannot review alleged errors in the application of state procedural rules because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."[64]

On federal habeas review, the Court looks to the last reasoned opinion of the state courts to determine whether denial of relief was on the merits or based on state law procedural grounds.[65]

In this case, on June 20, 2014, the Louisiana Supreme Court found Petitioner's third PCR Motion untimely under Louisiana Code of Criminal Procedure La. Code Crim.

---

[59] *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).
[60] *Id.* (first citing *Coleman v. Thompson*, 501 U.S. 722, 731-32, (1991); then citing *Harris v. Reed*, 489 U.S. 255, 262-63, (1989); and then citing *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977)).
[61] *Rhoades v. Davis*, 914 F.3d 357, 372 (5th Cir. 2019).
[62] *Id.* (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)).
[63] *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009)).
[64] *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (refusing to examine alleged errors in the application of the procedural bar to applications for postconviction relief in Louisiana Code of Criminal procedure article 930.3) (quoting *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999)).
[65] *See Wilson v. Seller*, 584 U.S. 122, 125 (2018); *see also Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012) (stating courts "look to the 'last reasoned opinion,' and where a higher state court has ruled on a petitioner's motion on grounds different than those of the lower court, [courts] review the higher court's decision alone").

Proc. art 930.8.[66] This was the first time the Louisiana Supreme Court reviewed Petitioner's prosecutorial misconduct claim, which this Court held to be unexhausted in its dismissal of Petitioner's first federal habeas petition.[67] La. Code Crim. Proc. art 930.8A. states in relevant part, "No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final."

The Louisiana Supreme Court expressly cited La. Code Crim. Proc. art 930.8, indicating the reasoning for its holding was independent of federal law, when it first addressed Petitioner's prosecutorial misconduct claim.[68] Moreover, the Fifth Circuit has held that invocation of La. Code Crim. Proc. art 930.8 is a clear expression of an independent state law basis.[69]

"A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief," and the burden is on the petitioner to prove inadequacy.[70] Petitioner has presented no evidence that La. Code Crim. Proc. art 930.8 is applied irregularly, and the Fifth Circuit has previously held La. Code Crim. Proc. art 930.8 is an adequate ground invoked regularly by Louisiana courts.[71] Therefore the presumption of adequacy applies. The Louisiana Supreme Court dismissed Petitioner's prosecutorial misconduct claim based on an independent and

---

[66] R. Doc. 57-9 at p. 1.
[67] *Id.*; *Ficher*, No. 05-6373, R. Doc. 11 at p 1 (E.D. La. Jan. 22, 2007) (admitting Petitioner's prosecutorial misconduct argument was not exhausted); *Ficher*, No. 05-6373, R. Doc. 12 at pp. 9-14 (E.D. La. Oct. 20, 2008); *Ficher*, No. 05-6373, R. Doc. 14 (E.D. La. Nov. 19, 2008).
[68] R. Doc. 57-9 at p. 1.
[69] *See, e.g.*, *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Ardison v. Cain*, 264 F.3d 1140 (5th Cir. 2001), 2001 WL 822445, at *4-5 (unpublished); *see also Besse v. Tanner*, No. 16-2992, 2017 WL 2936311, at *8 (E.D. La. July 7, 2011).
[70] *Lott v. Harget*, 80 F.3d 161, 165 (5th Cir. 1996) (citing *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995)).
[71] *See Glover*, 128 F.3d at 902.

adequate state procedural rule. Accordingly, Petitioner's prosecutorial misconduct claim is procedurally barred from federal habeas review.

A petitioner may "overcome a procedural bar . . . [by] show[ing] cause for the default and actual prejudice, or that a miscarriage of justice will occur if the federal court does not consider the claim."[72] Cause is "'something external to the petitioner, something that cannot fairly be attributed to him' that impedes his efforts to comply with the [state] procedural rule."[73] Petitioner does not argue cause for his default. "If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice."[74]

Petitioner argues that equitable tolling should apply to make his claims timely.[75] "Equitable tolling, however, is not applicable to the doctrine of procedural default."[76] If Petitioner is arguing equitable tolling should have applied in state court, then this argument must fail because this Court has no authority to review state-court decisions on state-law questions, like the application of La. Code Crim. Proc. art 930.8.[77]

A petitioner also may overcome a procedural bar by showing a fundamental miscarriage of justice will occur if the Court does not review the merits of his claim. To do so, Petitioner must make a "colorable showing of factual innocence."[78] Petitioner argues Alexander's affidavit, in which she states Ficher did not shoot the victim, proves his

---

[72] *Gonzales v. Davis*, 924 F.3d 236, 242 (5th Cir. 2019).
[73] *Matchett v. Dretke*, 380 F.3d 844, 848 (5th Cir. 2004) (quoting *Moore v. Roberts*, 83 F.3d 699, 704 (5th Cir. 1999)).
[74] *Matchett*, 380 F.3d at 849.
[75] R. Doc. 60 at pp. 1-6.
[76] *Mills v. Louisiana*, No. 09-7453, 2013 WL 3776338, at *15 (E.D. La. July 15, 2013).
[77] *See, e.g.*, *Lee*, 2004 WL 2984274, at *1 n.2; *Trevino*, 168 F.3d at 184.
[78] *Murray v. Quarterman*, 243 Fed. App'x 51, 55 (5th Cir. 2007) (quoting *Bagwell v. Dretke*, 372 F.3d 748, 756 (5th Cir. 2004)).

innocence.[79] The Magistrate Judge disagreed because he found the affidavit's authenticity was "questionable," and found the affidavit unreliable and not compelling.[80]

Considering its authenticity, the Court agrees with the Magistrate Judge's characterization of the affidavit at questionable. There are several issues with the affidavit, none of which Petitioner addresses in his objections. For one, the notary signature is, as the Magistrate Judge wrote, "illegible" and the affidavit lacks a notary stamp or seal, a notary number, and any identification on where the notary is commissioned.[81] The affidavit also was not made under penalty of perjury.[82] There is no indication as to whether the notary verified Alexander's identity.[83] These deficiencies make the Court question the authenticity of Alexander's affidavit.

Considering its reliability, the Court again agrees with the Magistrate Judge's finding that the affidavit is unreliable. Alexander did not sign an affidavit attesting to Petitioner's innocence until April 1, 2003.[84] This date is over ten years after the date of Kevin Smith's ("Smith") murder.[85] The amount of time between the murder and Alexander's execution of an affidavit regarding the murder reduces the affidavit's credibility.[86]

Another issue for Petitioner is the Fifth Circuit's high bar for prevailing on an actual innocence claim.[87] To prevail, Petitioner must submit "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is

---

[79] R. Doc. 1-1 at p. 2; R. Doc. 60 at pp. 6-9.
[80] R. Doc. 59 at pp. 17-20.
[81] R. Doc. 1-1 at p. 2.
[82] *Id.*; *Weber v. Cain*, No. 06-1055, 2008 WL 3876399, at *15 (E.D. La. Aug. 20, 2008).
[83] R. Doc. 1-1 at p. 2.
[84] *Id.*
[85] *Id.*
[86] *Komolafe v. Quarterman*, 246 Fed. App'x 270, 272 (5th Cir. 2007) ("[T]he credibility of Smallwood's affidavit is mitigated by the fact that it was submitted eight years after Komolafe was convicted.").
[87] *Floyd v. Vannoy*, 894 F.3d 143, 154-55 (5th Cir. 2018).

also satisfied that the trial was free of nonharmless constitutional error."[88] Petitioner must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."[89] "The standard is seldom met."[90]

Alexander's affidavit, as the Magistrate Judge concluded, does not meet the Fifth Circuit's standard. At best, Alexander's affidavit creates a fact issue. Given the problems with Alexander's affidavit's authenticity and reliability discussed above and the conflicting trial testimony, Petitioner cannot meet the *Schlup v. Delo* "no reasonable juror" standard.

Petitioner establishes neither cause for his default nor his actual innocence. Thus Petitioner's prosecutorial misconduct claim is procedurally barred.

## II. Petitioner's sufficiency of the evidence claim is meritless.

Petitioner next objects to the Magistrate Judge's finding that his sufficiency of the evidence claim is meritless.[91] *Jackson v. Virginia*, 443 U.S. 307 (1979) governs sufficiency of the evidence claims. Under *Jackson*, a federal habeas court addressing a sufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.[92] "The *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"[93] To

---

[88] *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).
[89] *Schlup*, 513 U.S. at 327.
[90] *Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018) (citing *House v. Bell*, 547 U.S. 518, 538 (2006)).
[91] R. Doc. 59 at pp. 22-30; R. Doc. 60 at pp. 9-10.
[92] 443 U.S. at 319; *Williams v. Cain*, 408 Fed. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).
[93] *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).

determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.[94]

Review of the sufficiency of the evidence does not include review of the (1) weight of the evidence or (2) the credibility of the witnesses, because those determinations are the exclusive province of the jury.[95] All credibility choices and conflicting inferences must be resolved in favor of the verdict.[96] A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact finder.[97] A claim of insufficient evidence presents a mixed question of law and fact.[98] Accordingly, the Court must examine whether the state court's denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.[99]

Petitioner's only sufficiency of the evidence argument is that the prosecution did not prove his identity as Smith's murderer beyond a reasonable doubt.[100] Louisiana law requires the prosecution to prove the identity of the perpetrator in addition to the elements of the crime.[101]

At Petitioner's trial, the prosecution used the testimony of several witnesses to establish Petitioner's identity.[102] Two eyewitnesses, Arland Burrell ("Burrell") and Young, testified to watching Petitioner shoot and murder Smith.[103] Both remembered picking Petitioner's picture out of a photographic lineup to identify Petitioner as Smith's

---

[94] *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).
[95] *United States v. Young*, 107 Fed. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)).
[96] *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).
[97] *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995).
[98] *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008).
[99] *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).
[100] R. Doc. 1 at p. 10; R. Doc. 57-2 at pp. 7-8, 65-69; R. Doc. 60 at pp. 9-10.
[101] *State v. Draughn*, 2005-1825, p. 8 (La. 1/17/07), 950 So. 2d 583, 593; *State v. Thomas*, 15-759, p. 19 (La. App. 5 Cir. 5/12/16), 192 So. 3d 291, 303.
[102] R. Doc. 57-2 at pp. 181-85, 200-06, 210.
[103] *Id*. at pp. 200-06, 210.

murderer.[104] An officer confirmed the eyewitnesses' testimony that the eyewitnesses picked Petitioner out of a photographic lineup.[105]

The Magistrate Judge found Burrell's testimony alone "was sufficient to support the conviction."[106] Indeed, as the Fifth Circuit has written, "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction."[107] Petitioner does not grapple with this point. In Petitioner's second objection, Petitioner focuses only on the fact that Alexander did not testify at trial and the credibility of Burrell and Young.[108] Credibility, however, is unimportant to this Court's review because, "under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."[109] Again Petitioner does not address this point.

The jury was entitled to rely on Burrell and Young's eyewitness testimony to find that the prosecution met the identification element. It is not this Court's role to overturn the jury's finding on the identification element. Petitioner's sufficiency of the evidence argument is meritless.

## III.  Petitioner's three ineffective assistance of counsel claims are meritless.

In *Strickland v. Washington*, the Supreme Court established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate *both*: (1) counsel's performance was deficient, and (2) the

---

[104] *Id.* at pp. 181-85, 200, 205.

[105] *Id.*

[106] R. Doc. 59 at p. 27.

[107] *United States v. King*, 703 F.2d 119, 125 (5th Cir. 1983) (quoting *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979)); *accord Davis v. Cain*, No. 15-6652, 2016 WL 4537915, at *7 (E.D. La. May 24, 2016), *R. & R. adopted*, 2016 WL 4529877 (E.D. La. Aug. 30, 2016).

[108] R. Doc. 60 at pp. 9-10.

[109] *Schlup*, 513 U.S. at 330; *see also Ramirez*, 398 F.3d at 695 ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict.") (quoting *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999)).

deficient performance prejudiced his defense.[110] A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."[111] "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[112]

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.[113] "Counsel's performance is deficient if it falls below an objective standard of reasonableness."[114] Analysis of counsel's performance must consider the reasonableness of counsel's actions in light of all the circumstances.[115] "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"[116] A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.[117]

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[118] In this context, a reasonable

---

[110] *Strickland v. Washington*, 466 U.S. 668, 697 (1984).
[111] *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).
[112] *Strickland*, 466 U.S. at 689.
[113] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).
[114] *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).
[115] *See Strickland*, 466 U.S. at 689.
[116] *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).
[117] *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).
[118] *Strickland*, 466 U.S. at 694.

probability is "a probability sufficient to undermine confidence in the outcome."[119] In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."[120] If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry—deficient performance or actual prejudice—it may dispose of the ineffective assistance claim without addressing the other prong.[121]

For purposes of federal habeas review, the issue of ineffective assistance of counsel presents a mixed question of law and fact.[122] As such, the question is whether the state court's denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent, namely *Strickland*.[123] "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly [deferential]."[124] The Supreme Court has stressed, in no uncertain terms, that "a federal court may grant relief only if every "'fairminded juris[t]'" would agree that every reasonable lawyer would have made a different decision.[125]

### A.  Petitioner's trial counsel was not ineffective for not filing a motion to quash.

Petitioner objects to the Magistrate Judge's finding that Petitioner's trial counsel was not ineffective for failure to file a motion to quash Petitioner's indictment.[126] In his Petition, Petitioner argued his trial counsel was ineffective because Petitioner's trial counsel "failed to file a motion to Quash the Indictment on the grounds that it was

---

[119] *Id.*
[120] *Crockett*, 796 F.2d at 793.
[121] *Strickland*, 466 U.S. at 697.
[122] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994).
[123] *Murphy v. Johnson*, 205 F.3d 809, 813 (5th Cir. 2000).
[124] *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted).
[125] *Dunn v. Reeves*, 141 S. Ct. 2405 (2021) (citing *Richter*, 562 U.S. at 101).
[126] R. Doc. 60 at p. 13.

returned by grandjurys [sic] selected pursuant to statutes applicable only to Orleans Parish."[127] Petitioner's argument relates to Orleans Parish statutes allowing the state district judge to personally select the grand jury panel and foreperson.[128] The Louisiana Supreme Court held these statutes unconstitutional in *State v. Dilosa*.[129] *Dilosa* issued over ten years after an Orleans Parish Grand Jury indicted Petitioner.[130] Thus Petitioner's trial counsel had no basis for filing a motion to quash at the time Petitioner was indicted and did not demonstrate deficient conduct.[131]

For the first time in his objections, Petitioner argues his trial counsel was ineffective for not raising a *Batson v. Kentucky*, 476 U.S. 79 (1986) challenge to the empanelment of the jury.[132] Because Petitioner did not cite any record evidence showing the alleged discrimination prejudiced him during his state criminal proceedings, this argument fails *Strickland*'s prejudice prong.[133] Though Petitioner does cite "[s]tatistical data,"[134] this is insufficient to prove a constitutional violation.[135]

---

[127] R. Doc. 1 at pp. 4, 10.

[128] *Id.*; R. Doc. 59 at pp. 33-35.

[129] 848 So. 2d 546, 551 (La. 2003).

[130] R. Doc. 57-1 at pp. 21-22.

[131] *Womack-Grey v. Warden, La. Corr. Inst. for Women*, No. 08-3956, 2010 WL 3473081, at *9 (E.D. La. Apr. 14, 2010), *R. & R. adopted*, 2010 WL 3473811 (E.D. La. Aug. 27, 2010); *see also United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions.").

[132] R. Doc. 1; R. Doc. 60 at p. 13.

[133] *See Strickland*, 466 U.S. at 694; *see also Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998); *Green v. Vannoy,* No. 15-915, 2016 WL 6477041, at *9 (E.D. La. May 24, 2016), *R. & R. adopted*, 2016 WL 6441275 (E.D. La. Nov. 1, 2016). It is also arguable that Petitioner waived the *Batson* issue through failure to raise it in his Petition. *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994).

[134] R. Doc. 1 at p. 10.

[135] *Griffin v. Cain*, No. 08-5098, 2010 WL 4365844, at *8-9 (E.D. La. Sept. 23, 2010), *R. & R. adopted*, 2010 WL 4340787 (E.D. La. Oct. 25, 2010), *aff'd*, 470 Fed. App'x 403 (5th Cir. 2012).

**B. Petitioner's trial counsel was not ineffective for his failure to request a limiting instruction.**

Petitioner objects to the Magistrate Judge's finding that Petitioner's trial counsel was not ineffective because he did not request a limiting instruction.[136] In his Petition, Petitioner argued his trial counsel was ineffective for not requesting a limiting instruction in relation to the "proper use of prior inconsistent statements, concerning the state's impeachment of it's [sic] own witness Robert Young."[137] At trial, Young testified that he witnessed Petitioner shoot and kill Smith.[138] Petitioner's trial counsel impeached Young on cross examination with Young's testimony at a suppression hearing that Young did not witness Smith's murder.[139] In his trial testimony, Young admitted he previously testified he did not witness Smith's murder.[140] On redirect and when called as a defense witness, Young persisted in his testimony that he witnessed Petitioner shoot Smith and that his testimony at the suppression hearing was false.[141]

If Petitioner's trial counsel had requested a limiting instruction, then the trial judge likely would have instructed the jury not to consider Young's prior testimony—that he did not witness Petitioner murder Smith—as substantive evidence.[142] Without a limiting instruction, the jury could have considered Young's prior inconsistent statement as substantive evidence. In line with the Magistrate Judge, the Court finds that a limiting instruction would have harmed, not helped, Petitioner because Young's testimony that he had not witnessed Smith's murder was beneficial to Petitioner.

---

[136] R. Doc. 60 at pp. 12-13.
[137] R. Doc. 1 at p. 8.
[138] R. Doc. 57-2 at p. 200.
[139] *Id.* at pp. 201-02.
[140] *Id.*
[141] *Id.* at pp. 202, 213-22.
[142] *State v. Allien*, 366 So. 2d 1308, 1311 (La. 1978).

**C. Petitioner's trial counsel was not ineffective for failing to call Alexander to testify at trial.**

Petitioner objects to the Magistrate Judge's finding that Petitioner's trial counsel was not ineffective for failing to call Alexander at trial to testify.[143] "Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain."[144] To demonstrate prejudice on an ineffective assistance of counsel claim for failure to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."[145]

In support of Petitioner's ineffective assistance of counsel claim for failure to call Alexander as a trial witness, Petitioner cites Alexander's affidavit.[146] In this affidavit, Alexander states:

> I saw the man come from behind the bushes with a long black gun in front of the 3800 block of Martin Luther King. He began shooting as he came from out of the bushes. He kept firing and pumping the gun until he caught up with Kevien [sic]. When he stopped shooting, he ran right infront [sic] my house and then into the Thalia Courtyard. The man's face was not familiar, however, the man was not Charles Ficher who I've known to stay around that area for some years. After finding out later that Charles Ficher was being charged with that same murder, I volunteered to tell what I saw after getting in touch with his people. I was told I would be subpoenaed by his lawyer but I was never subpoenaed.[147]

---

[143] R. Doc. 60 at pp. 11-12; R. Doc. 59 at pp. 38-42.
[144] *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).
[145] *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray v. Quarterman*, 265 Fed. App'x. 296, 298 (5th Cir. 2008)).
[146] R. Doc. 1; R. Doc. 1-1 at p. 2.
[147] R. Doc. 1-1 at p. 2.

This affidavit is not sufficient to establish ineffective assistance of counsel.[148] Alexander did not state, nor does Petitioner show through record evidence that, Alexander was available to testify at Petitioner's trial and would have testified if called at trial.[149] Thus Petitioner cannot meet *Strickland*'s prejudice prong.[150]

Additionally, Alexander's affidavit does not conclusively state that Petitioner's trial counsel knew of Alexander's existence or that Alexander witnessed Smith's murder.[151] Alexander's affidavit neither explains who Petitioner's "people" were nor who told her Petitioner's trial counsel would subpoena her.[152]

There also is no record evidence in support of Petitioner's assertion that his trial counsel knew or should have known of Alexander's existence outside of Petitioner's self-serving allegations.[153] "A petitioner does not meet his burden of proof by presenting nothing more than his own unsupported, self-serving allegations that his counsel was ineffective."[154] Further, even Petitioner himself indicated his confusion over Alexander's identity when he called Alexander by different first names (Kimmie and Elmegio) in his multiple PCR motions.[155]

For the reasons above, Petitioner cannot meet either prong of *Strickland* in relation to Petitioner's argument that his trial counsel was ineffective for not calling Alexander as a witness at trial. Petitioner's trial counsel was not deficient because

---

[148] *Woodfox*, 609 F.3d at 808; *Day*, 566 F.3d at 538.

[149] R. Doc. 1-1 at p. 2.

[150] *Vasquez v. Thaler*, 505 Fed. App'x 319, 327 (5th Cir. 2013); *Gray v. Epps*, 616 F.3d 436, 443 (5th Cir. 2010) ("[T]here is no statement from the sisters providing that they would have testified at Gray's trial. This record, therefore, does not allow us to conclude that these two sisters would have testified as witnesses at Gray's trial."); *Day*, 566 F.3d at 538-39.

[151] R. Doc. 1-1 at p. 2; R. Doc. 59 at p. 40.

[152] R. Doc. 1-1 at p. 2; R. Doc. 59 at p. 40.

[153] R. Doc. 57-3 at pp. 33-35; R. Doc. 57-1 at pp. 46, 52, 56-58, 66, 70-72.

[154] *Green*, 2016 WL 6477041, at *9; *Green*, 160 F.3d at 1042.

[155] R. Doc. 57-3 at pp. 33-35; R. Doc. 57-1 at pp. 46, 52, 56-58, 66, 70-72.

Petitioner cannot establish his trial counsel's knowledge of Alexander's existence. Petitioner cannot show prejudice because the record evidence does not show Alexander was available to testify at trial and willing to testify.

## IV.   Petitioner's is not entitled to an evidentiary hearing

In Petitioner's objections, Petitioner requests an evidentiary hearing. 28 U.S.C. § 2254(e)(2) states:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on--
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner does not show the applicability of a new, retroactive rule of constitutional law. Nor does Petitioner point to a factual predicate that could not have been discovered through the exercise of due diligence. Petitioner also does not show by clear and convincing evidence that, but for an alleged constitutional error, no reasonable factfinder would have found Petitioner guilty of Smith's murder. Therefore Petitioner is not entitled to an evidentiary hearing.

**V.      The portions of the Magistrate Judge's Report and Recommendation not objected to are not clearly erroneous or contrary to law.**

Having carefully reviewed the record, the Petition for Writ of Habeas Corpus,[156] the Report and Recommendation,[157] and the applicable law, the Court finds the Magistrate Judge's unobjected to findings are not clearly erroneous or contrary to law.

<u>**CONCLUSION**</u>

**IT IS ORDERED** that the petition for federal habeas corpus relief filed by Charles Ficher, Jr. is **DISMISSED WITH PREJUDICE**.

**New Orleans, Louisiana, this 1st day of October, 2024.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[156] R. Doc. 1.
[157] R. Doc 59.